THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GARY E. DOWDING, Defendant-Appellant.

Second District   No. 2—06—1217

Opinion filed March 10, 2009.

Thomas A. Lilien and Jaime L. Montgomery, both of State Appellate Defender's Office, of Elgin, for appellant.

John B. Roe, State's Attorney, of Oregon (Lawrence M. Bauer, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Alexander Vroustouris, of Chicago, for the People.

JUSTICE JORGENSEN delivered the opinion of the court:

Defendant, Gary Dowding, pleaded guilty to reckless homicide (720 ILCS 5/9—3(a) (West 2004)) and aggravated driving while under the influence of a controlled substance (aggravated DUI) (625 ILCS 5/11—501(d)(1)(F) (West 2004)). He was sentenced to probation on each charge and ordered to pay $3,414 in court costs, fees, and fines.

Defendant subsequently pleaded guilty to a probation violation based on testing positive for cocaine. The trial court sentenced defendant to two concurrent 10-year terms of imprisonment. Defendant timely appealed and raises the following issues: (1) whether the trial court, in imposing a 10-year sentence for aggravated DUI, improperly considered in aggravation a factor inherent in the offense, *i.e.*, the fact that defendant's conduct caused the death of another; (2) whether defendant's 10-year sentence for reckless homicide should be reduced where the trial court imposed a sentence that is five years longer than the maximum permissible sentence; and (3) whether various costs, fees, and fines were properly imposed. For the reasons that follow, we affirm in part, reverse in part, and remand with directions.

## I. BACKGROUND

On November 15, 2005, defendant was charged by indictment with aggravated DUI, DUI, and two counts of reckless homicide. On March 23, 2006, defendant entered fully negotiated guilty pleas to one count of reckless homicide and aggravated DUI. The remaining charges were nol-prossed. The parties agreed that defendant would be sentenced to 30 months' probation for reckless homicide and 48 months' probation for aggravated DUI, to be served concurrently. Defendant would also serve 140 days in jail with credit for time served.

According to the factual basis for the pleas, various witnesses would testify that, on September 22, 2005, defendant disregarded a stop sign and drove a semitruck through an intersection and struck a vehicle. The driver of the vehicle was pronounced dead at the scene. Defendant's truck "had brakes out of adjustment on axles one, two, and three," and it "had defective and inadequate brake linings in the axles." Further, the truck was "overweight" and was not registered. Tests of defendant's blood and urine revealed the presence of "cocaine metabolites" in defendant's system.

After accepting defendant's guilty pleas, the trial court sentenced defendant in accordance with the parties' agreement. Additionally, with respect to the reckless homicide conviction, the trial court stated: "You are to pay the $10 fee to Crime Stoppers as well as the costs, fees, and penalties in this case." With respect to the aggravated DUI conviction, the trial court stated:

> "[Y]ou are to pay a $25 per month probation service fee, a $10 contribution to Crime Stoppers on this case, as well as the court costs on this case.
>
> You are also to pay restitution pursuant to statute in the amount of $2,700 to the Oregon Fire Department, 100 West Washington Street, in Oregon."

In addition, the two sentencing orders each list a $10 "Arrestee's

Medical Costs" charge and a $20 "Violent Crime Victims Assistance" charge.

On July 14, 2006, the State petitioned to revoke defendant's probation, alleging that defendant tested positive for cocaine in a random urinalysis on July 13, 2006, and failed to cooperate with or satisfactorily complete substance abuse counseling as directed by the probation department. On September 29, 2006, the parties appeared before the trial court. Defendant admitted to the first allegation and, in exchange, the second allegation was dismissed. Reciting the factual basis, the State noted that defendant had submitted to a random urinalysis on July 13, 2006, and had tested positive for cocaine. When confronted with the results of the test, defendant admitted using cocaine. Defendant signed in front of his probation officer a written statement admitting that he used cocaine on July 8, 2006. The court found that there was a factual basis for defendant's admission and that it was knowing and voluntary.

A sentencing hearing took place on November 17, 2006. Defendant's probation officer, Brooke Plachno, testified in mitigation. Plachno first met defendant in May 2006. Defendant tested positive for cocaine on July 13, 2006, and she had seen defendant weekly since July 27, 2006. Defendant had never missed an appointment. Plachno recommended to defendant that he "get re-involved in treatment," and she suggested that he participate in "AA or NA." Defendant followed her suggestions. Defendant completed "level three treatment" at the end of September and "started aftercare at the beginning of October." As of October 6, 2006, defendant had been working at Sterling Environmental through a temporary agency. As of the date of the hearing, defendant had been attending AA meetings once per week, but Plachno wanted him to attend at least two or three times per week. She stated: "I believe that a period of incarceration would be appropriate. [Defendant] is working now, I understand that he has to support his family, but maybe that's something, work release is something he could work out with the jail." On cross-examination, Plachno testified that, after defendant tested positive for cocaine, defendant initially told her that he had "used some with friends over the weekend" but then denied using cocaine and told her "that he had actually used his mom's mouthwash, which contained a cocaine derivative."

Defendant testified that he lived with his wife and his 78-year-old mother in his mother's house. His mother's health was "not very good." He felt that he was needed at home. In July 2006, he was working for Sterling Environmental, earning $10 per hour. Defendant was terminated following the positive drug test. Defendant admitted

that he used cocaine once while on probation but stated that he had not used any illegal substances since then. He returned to Sterling Environmental about two weeks prior to the hearing, and he "bring[s] home [$]312 a week." He had been paying back the court costs and fines ordered by the trial court. Defendant had completed 75 hours of treatment.

Following counsel's arguments, the trial court stated:

"First of all, the court wants to make sure the record is clear that the range of sentence in this case is potentially a resentencing to a term of probation or conditional discharge. If there's a term of imprisonment, that term of imprisonment, under the statute, is from three to fourteen years in the Department of Corrections. That is the range on each count to which the defendant has been convicted ***."

The court noted that, from the time of sentencing through the filing of the petition to revoke probation, defendant did not make any payments toward his $3,414 balance. Defendant made two $25 payments in August 2006, a $50 payment in September 2006, and a $50 payment in November 2006, leaving a balance of $3,299 remaining. The court stated:

"Now, why I point that out *** is, I think that, that is representative to me in a way of the whole way in which you seem to have viewed this case as it has gone along. When you stood before me and pled guilty pursuant to the plea agreement in March, you shed tears and at that time I believed that perhaps you were actually truly remorseful about the pain that you caused to the Kerwin family by causing the accident which caused the death of their son. But as I review everything that has occurred and is before me since that plea on that date, I think that the way you've handled the payment of your fees is simply an analogy for how you have viewed your whole responsibility, with regard to your responsibilities to the Kerwin family and your responsibilities to this court, and your responsibilities to this community and, and to society in general, and I think it's very representative and very telling."

The court noted that defendant has a "lengthy criminal history." It stated:

"And while I realize that there were many, many years during which the Defendant did not violate the law, at least didn't violate the law in serious ways, there are still many traffic violations, and I think there can be an argument made that shows a general disregard for the law, but there weren't serious violations, of the law, but what I find interesting is the length of time and the span of his lifetime that this Defendant has violated the law in very serious ways."

As to the factors in aggravation and mitigation, the court stated as follows:

"I find at this time that there are no factors in mitigation in this case. *** [W]hile I am sympathetic *** to your mother's difficulties, I do not find that that issue rises to the level of excessive hardship to a dependent. ***

The factors in aggravation that I do find apply in this case are, Number 1, that the Defendant's conduct caused or threatened serious harm. No question, this Defendant's conduct in this offense caused the greatest harm there could be, that is the death of another person.

I find that the Defendant has a history of prior delinquency or criminal activity. I've outlined that previously, and that history goes over a long, long period of time.

And I find that Number 7 also applies, and that is that this sentence is necessary to deter others from committing the same crime."

After imposing sentence, the trial court admonished defendant that he had a right to appeal. However, the trial court did not inform defendant that he needed to file a motion to reconsider his sentence to pursue any sentencing issue on appeal.

The written judgment provided that defendant be given credit for time served from November 4, 2005, to March 23, 2006, and for July 15, 2006.

Defendant did not file a postsentencing motion. Defendant filed a notice of appeal on November 27, 2006.

## II. ANALYSIS

### A. Propriety of Defendant's 10-Year Sentence for Aggravated DUI

■ Defendant argues that his 10-year sentence for aggravated DUI should be reduced because the trial court considered in aggravation a factor inherent in the offense, i.e., the fact that defendant's conduct caused the death of another. A person is guilty of aggravated DUI if the person, while driving under the influence of drugs or alcohol, was involved in an accident that resulted in the death of another. 625 ILCS 5/11—501(d)(1)(F) (West 2004).

The State argues that, because defendant did not file a written motion in the trial court, defendant has forfeited any challenge to his sentence. 210 Ill. 2d R. 605. The State further argues that, forfeiture aside, the trial court's comments concerning the death of the victim were proper, as the court "merely acknowledged that a death had occurred." Alternatively, the State argues that the trial court's consideration of the victim's death as an aggravating factor, though

improper, does not require a remand, because said consideration did not lead to a lengthier sentence.

In response to the State's forfeiture argument, defendant acknowledges that he did not file a motion to reconsider his sentence, but he asks this court to relax the forfeiture rule because the trial court failed to properly admonish him under Supreme Court Rule 605. 210 Ill. 2d R. 605. When a defendant's probation is revoked, Rule 605(a) requires the trial court to advise the defendant that, if the defendant seeks to challenge the correctness of the sentence, or any aspect of the sentencing hearing, the defendant must file within 30 days of the date on which sentence is imposed a written motion asking the trial court to reconsider the sentence. 210 Ill. 2d Rs. 605(a)(1), (a)(3)(B); see generally *People v. Tufte*, 165 Ill. 2d 66 (1995).

At the sentencing hearing, the trial court did not admonish defendant that he needed to file a motion to reconsider his sentence in order to preserve any sentencing issue:

> "I must advise you at this time that you do have the right to appeal the judgment and sentence of this court. However, prior to taking that appeal, you must file within 30 days of today's date a written motion asking for leave to withdraw your admission to this petition to revoke. If that motion were allowed, *** the sentence would be vacated and this matter would be set for hearing. Any issues or claims of error that you fail to put in that motion would be deemed waived on appeal."

The trial court's admonishment that defendant must move to withdraw his admission to the petition to revoke probation was inaccurate. To be sure, when a defendant is sentenced on a negotiated guilty plea, he may appeal only after moving to withdraw his guilty plea. See 210 Ill. 2d R. 605(c). This sentence, however, was imposed on an admission to a probation violation, which triggered the admonishments under Rule 605(a), regardless of whether the original guilty pleas were negotiated. See 210 Ill. 2d R. 605(a)(1); see generally *Tufte*, 165 Ill. 2d 66. Again, the trial court made no mention that defendant could file a motion to reconsider his sentence. Under these circumstances, we will address the merits of defendant's sentencing argument, and, in any case, we note that forfeiture "limits the parties' ability to raise an argument, not this court's right to entertain an argument." *People v. Benford*, 349 Ill. App. 3d 721, 734 (2004).

Turning to the merits, it is well established that a factor inherent in the offense should not be considered as a factor in aggravation at sentencing. *People v. Conover*, 84 Ill. 2d 400, 404 (1981); *People v. Malin*, 359 Ill. App. 3d 257, 264 (2005). However, there is a strong presumption that the trial court based its sentencing determination

on proper legal reasoning, and thus we review the trial court's sentencing decision with deference. *People v. Bowman*, 357 Ill. App. 3d 290, 303-04 (2005). The burden is on the defendant to affirmatively establish that the sentence was based on improper considerations. *People v. Conley*, 118 Ill. App. 3d 122, 133 (1983).

In determining whether the trial court based the sentence on proper aggravating and mitigating factors, a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court. *People v. Peshak*, 333 Ill. App. 3d 1052, 1069 (2002), *overruled on other grounds by People v. Pomykala*, 203 Ill. 2d 198 (2003). In determining the exact length of a particular sentence within the sentencing range for a given crime, the trial court may consider as an aggravating factor the *degree* of harm caused to a victim, even where serious bodily harm is arguably implicit in the offense of which the defendant is convicted. *People v. Saldivar*, 113 Ill. 2d 256, 269 (1986). The trial court may also consider the *manner* in which the victim's death was brought about, as well as the *seriousness, nature,* and *circumstances* of the offense, including the nature and extent of each element of the offense. *Saldivar*, 113 Ill. 2d at 271-72. However, the trial court may *not* consider the end result, *i.e.,* the victim's death, as a factor in aggravation where death is implicit in the offense. *Saldivar*, 113 Ill. 2d at 272.

During closing argument at the sentencing hearing, the State, in requesting the maximum term of 14 years' imprisonment, stated five times that defendant "killed someone" or "caused the death of someone." Further, the State argued that three statutory factors in aggravation applied: (1) the defendant's conduct caused or threatened serious harm; (2) the defendant has a history of prior delinquency or criminal activity; and (3) the sentence is necessary to deter others from committing the same crime. 730 ILCS 5/5—5—3.2(1), (3), (7) (West 2006).

The trial court then explained the reasons for the sentence imposed. First, the trial court discussed at length how defendant's behavior while out on probation showed that defendant did not accept sufficient responsibility for his actions. The trial court also discussed defendant's history of traffic violations and general disregard for the law, stating that the best predictor of future behavior is past behavior. Finally, the trial court summarized the factors in aggravation: "The factors in aggravation that I do find apply in this case are, Number 1, that the defendant's conduct caused or threatened serious harm. No question, this defendant's conduct in this offense caused the greatest harm there could be, that is the death of another person."

In light of the foregoing comments, we conclude that the trial

court improperly considered the victim's death as an aggravating factor. The court acted well within its bounds to mention the victim's death in its discussion concerning defendant's failure to accept sufficient responsibility for a serious offense and to comply with the conditions of probation. However, the court erred where it expressly stated that causing the victim's death was an aggravating factor upon which the sentence was based.

In *People v. Allan*, 231 Ill. App. 3d 447, 454 (1992), the trial court referenced the victim's death in a context similar to the instant case: "Looking at the statute also, as it talks about aggravation, it addresses itself to the aspect of causing bodily harm, and there is no question there was great bodily harm caused here, *i.e.*, the death of a young man." In *Allan*, this court held that the trial court's statement evinced that it focused in aggravation upon the death of the victim. *Allan*, 231 Ill. App. 3d at 459.

The context in which the trial court here made the complained-of statement also bears similarity to the circumstances in *Saldivar*, where the supreme court held that the trial court considered an improper factor in aggravation. *Saldivar*, 113 Ill. 2d at 272. In *Saldivar*, at the close of the sentencing hearing and prior to the pronouncement of the sentence, the State emphasized that the defendant, who was being tried for voluntary manslaughter, had killed the victim. The defendant's attorney interjected, stating that, by definition, voluntary manslaughter involves a death. Nevertheless, the trial court mentioned as an aggravating factor the fact that the defendant caused terrible harm to the victim, *i.e.*, death. *Saldivar*, 113 Ill. 2d at 264.

Admittedly, the State and the defense in the instant case did not debate the propriety of considering the victim's death in aggravation prior to the trial court's erroneous consideration of death as an aggravating factor. However, the State did argue that the harm caused to the victim, *i.e.*, death, should be considered in aggravation, and the trial court mirrored the State's recitation of aggravating factors when it announced the sentence. Thus, in our view, the trial court considered the victim's death as a factor in aggravation and did not merely mention the victim's death in its summary of the circumstances of the case or in stressing the seriousness of the offense.

Ideally, as discussed above, defendant should have raised his complaint in a motion to reconsider his sentence, so that the trial court would have had an opportunity to clarify whether and to what extent it considered in aggravation a factor inherent in the offense. In *Malin*, for example, the trial court, in sentencing the defendant to 10 years' imprisonment for reckless homicide, stated:

" 'One factor in aggravation is the defendant inflicted death upon

four individuals. \*\*\* People's family don't consider them as four individuals, they consider them as four loved family members. And I believe that this sentence is necessary to deter others from committing the same crime.' " *Malin*, 359 Ill. App. 3d at 260.

At the hearing on the motion to reconsider the sentence, the defendant in *Malin* argued that the trial court improperly considered the victims' deaths in aggravation. The trial court clarified its previous statements, explaining that the only factor in aggravation it had considered in imposing the sentence was the need to deter others from committing similar crimes. *Malin*, 359 Ill. App. 3d at 261; see also *People v. McCain*, 248 Ill. App. 3d 844, 851 (1993) (where the trial court focused only on proper factors at the motion-to-reconsider hearing). On appeal, the *Malin* court implied that it would have had to remand if the trial court had failed to make these clarifying comments. *Malin*, 359 Ill. App. 3d at 264.

Having found that the trial court improperly considered the victim's death as an aggravating factor, we turn to the question of whether remand is required. When a trial court considers an improper factor in aggravation, the case must be remanded unless it appears from the record that the weight placed upon the improper factor was so insignificant that it did not lead to a greater sentence. *People v. Glenn*, 363 Ill. App. 3d 170, 178 (2006). Courts of review have found the following considerations to be helpful in determining whether trial courts have afforded significant weight to improper factors such that remand would be required: (1) whether the trial court made any dismissive or emphatic comments in reciting its consideration of the improper factor; and (2) whether the sentence received was substantially less than the maximum sentence permissible by statute. See *People v. Bourke*, 96 Ill. 2d 327, 330 (1983) (trial court afforded insignificant weight to improper factor where it stated that it would "only comment in passing" as to a factor inherent in the offense and where the defendant's sentence was "substantially below" the maximum permissible sentence); *McCain*, 248 Ill. App. 3d at 849 (trial court afforded insignificant weight to improper factor where it had stated at the sentencing hearing that it "kind of" needed to look at the improper factor and later focused only on proper factors at the motion-to-reconsider hearing); *cf. Saldivar*, 113 Ill. 2d at 272 (trial court afforded too much weight to improper factor where it stated that the "number one" factor in aggravation was that the defendant caused serious harm, *i.e.*, death, to the victim). In *Saldivar*, the supreme court did not remand the case even though it was apparent that the trial court placed undue weight on the improper factor. *Saldivar*, 113 Ill. 2d at 272. Instead, the *Saldivar* court exercised its

authority under Supreme Court Rule 615(b)(4) (87 Ill. 2d R. 615(b)(4)) to reduce the defendant's sentence to four years, the minimum period of incarceration under the statute. *Saldivar*, 113 Ill. 2d at 272.

Here, it is unclear how much weight the trial court placed on the improper factor. Unlike in *Bourke, McCain,* and *Saldivar,* the court neither over nor underemphasized its consideration of the improper factor. Similarly, defendant's 10-year sentence, which was 4 years short of the maximum, does not indicate how much weight the trial court placed on the improper factor. Accordingly, we remand this case for a new sentencing hearing as to the aggravated DUI conviction.

### B. Propriety of Defendant's 10-Year Sentence for Reckless Homicide

■ Defendant argues that his 10-year sentence for reckless homicide should be reduced because the sentence is 5 years longer than the maximum permissible sentence. Defendant further contends that the mittimus erroneously reports that his conviction of reckless homicide is a Class 2 felony with a period of two years' mandatory supervised release (MSR). These claims are questions of law, to be reviewed *de novo*. See *Village of Mundelein v. Wisconsin Central R.R.,* 367 Ill. App. 3d 417, 422 (2006) (regarding the general proposition that questions of law are reviewed *de novo*).

The State confesses error on both issues. The State concedes that reckless homicide is a Class 3 felony (720 ILCS 5/9—3(d)(2) (West 2004)), which is punishable by a prison sentence of two to five years (730 ILCS 5/5—8—1(a)(6) (West 2006)). Further, the State concedes that the MSR term for a Class 3 felony is one year (730 ILCS 5/5—8—1(d)(3) (West 2006)). Defendant and the State agree that we should exercise our authority under Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)) and reduce defendant's sentence for reckless homicide to a five-year term in prison followed by one year of MSR.

Accordingly, pursuant to our authority under Rule 615(b)(4), we order the clerk of the circuit court to make the necessary corrections to the mittimus.

### C. Propriety of Various Costs, Fees, and Fines

### 1. $10 Crime Stoppers Fines

Defendant asserts that, because the trial court imposed a sentence of incarceration, it had no authority to require defendant to pay a local anti-crime program fine on each conviction. Section 5—6—3(b)(13) of the Unified Code of Corrections (Code) provides for the imposition of fines for the purpose of reimbursing local anti-crime programs (730 ILCS 5/5—6—3(b)(13) (West 2006)). That provision authorizes such

contributions only in cases where defendants were sentenced to probation, conditional discharge, or supervision. See *People v. Beler*, 327 Ill. App. 3d 829, 837 (2002). Thus, according to defendant, because the trial court revoked his probation and sentenced him to prison, the fines were not authorized. We disagree.

When it sentenced defendant to probation on March 23, 2006, the trial court imposed a $10 Crime Stoppers fine on each conviction, and defendant does not dispute that the court had the authority to do so. The fines became due at that time. When the trial court later sentenced defendant to prison, it noted that defendant had a balance due of $3,299. Contrary to defendant's claim, the court did not "reimpose" the fines. Defendant cites no authority supporting his claim that the court's subsequent revocation of his probation warrants vacation of the fines.

Alternatively, citing *People v. Littlejohn*, 338 Ill. App. 3d 281 (2003), defendant argues that he is entitled under section 110—14 of the Code of Criminal Procedure of 1963 (Criminal Procedure Code) (725 ILCS 5/110—14 (West 2006)) to a $5-per-day credit toward the fines. Ignoring *Littlejohn*, the State maintains that defendant is not entitled to the credit because section 110—14 of the Criminal Procedure Code applies only to "fines" and the $10 Crime Stoppers charges are "fees."

Section 110—14 of the Criminal Procedure Code provides that "[a]ny person incarcerated on a bailable offense who does not supply bail and against whom a *fine* is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant." (Emphasis added.) 725 ILCS 5/110—14 (West 2006). The plain language of the statute establishes that the credit applies only to "fines." *Littlejohn*, 338 Ill. App. 3d 281, 283 (2003). Accordingly, whether defendant is entitled to credit against each $10 Crime Stoppers charge turns solely on whether that charge constitutes a "fine" or a "fee."

■ In *People v. Jones*, 223 Ill. 2d 569, 581 (2006), the supreme court discussed the difference between fees, fines, and costs and noted as follows:

 " 'A "fine" is a pecuniary punishment imposed as part of a sentence on a person convicted of a criminal offense. [Citation.] A "cost" is a charge or fee taxed by a court such as a filing fee, jury fee, courthouse fee, or reporter fee. [Citation.] Unlike a fine, which is punitive in nature, a cost does not punish a defendant in addition to the sentence he [or she] received, but instead is a collateral consequence of the defendant's conviction that is compensatory in nature. [Citation.] A "fee" is a charge for labor or services,

especially professional services. [Citation.]' " *Jones*, 223 Ill. 2d at 581, quoting *People v. White*, 333 Ill. App. 3d 777, 781 (2002).

The supreme court summarized: "Broadly speaking, a 'fine' is a part of the punishment for a conviction, whereas a 'fee' or 'cost' seeks to recoup expenses incurred by the State—to 'compensat[e]' the State for some expenditure incurred in prosecuting the defendant." *Jones*, 223 Ill. 2d at 582.

■ In support of its claim that the $10 Crime Stoppers charge is a fee, the State points to the statutory provision authorizing its assessment, which provides:

"(b) The Court may *** require that the person:

\* \* \*

(13) contribute a reasonable sum of money, not to exceed the maximum amount of the fine authorized for the offense for which the defendant was sentenced, to a 'local anti-crime program', as defined in Section 7 of the Anti-Crime Advisory Council Act." 730 ILCS 5/5—6—3(b)(13) (West 2006).

Section 7 of the Anti-Crime Advisory Council Act defines "local anti-crime program" as follows:

"[A] plan established in various regions of this State which is designed to encourage the public to report incidences of crime to law enforcement agencies and to assist such agencies in the apprehension of criminal offenders. 'Local anti-crime program' also means a drug alert program or drug task force composed of or created by local law enforcement agencies." 20 ILCS 3910/7 (West 2006).

Without any further argument, the State claims that "[i]t is clear from a reading of both [sections] that the local anti-crime contribution is in fact a fee."

In *Littlejohn*, the Third District held that the charge imposed under section 5—6—3(b)(13) of the Code is a fine. *Littlejohn*, 338 Ill. App. 3d at 283-84. The court noted: "Nothing in the statutory provision authorizing this contribution suggests that the money will be used to reimburse the local anti-crime programs for costs associated with criminal prosecution or as a restitution for any loss suffered by the program." *Littlejohn*, 338 Ill. App. 3d at 283-84. The court concluded that "[t]he mandatory donation more closely resembles a punishment on the defendant in addition to the sentence he or she received." *Littlejohn*, 338 Ill. App. 3d at 284. We agree with the court's reasoning and conclusion.

Accordingly, because defendant was in custody from November 4, 2005, to March 23, 2006, and on July 15, 2006, he has sufficient credit to cover the $10 Crime Stoppers fine for each conviction.

## 2. Restitution to Oregon Fire Department

■ Defendant next contends that the trial court erred in ordering him to pay $2,700 in restitution to the Oregon Fire Department as part of his sentence for aggravated DUI. According to defendant, $2,700 exceeds the statutory maximum fee of $1,000. We agree.

When the court ordered defendant to pay $2,700 in restitution, section 11—501(m) of the Illinois Vehicle Code stated in relevant part:

> "(m) In addition to any other fine or penalty required by law, an individual convicted of a *violation of subsection (a) [regarding DUI]*, *** whose operation of a motor vehicle, *** while in violation of subsection (a), *** proximately caused an incident resulting in an appropriate emergency response, shall be required to make restitution to a public agency for the costs of that emergency response. The *restitution may not exceed $1,000* per public agency for each emergency response." (Emphasis added.) 625 ILCS 5/11—501(m) (West 2006) (subsequently amended by Pub. Act 95—578, §5, eff. June 1, 2008 (which omitted subsection (m))).

The State argues that the trial court did not specify whether the restitution was imposed as a condition of probation on the Criminal Code conviction (reckless homicide) or the Illinois Vehicle Code conviction (aggravated DUI). As noted by the State, if restitution was imposed as a condition of probation on the Criminal Code conviction, then section 5—5—6 of the Unified Code of Corrections (730 ILCS 5/5—5—6 (West 2006)) would apply.

Section 5—5—6, which does not place a cap on the restitution amount, states:

> "In all convictions *for offenses in violation of the Criminal Code of 1961* in which the person received any injury to their person or damage to their real or personal property as a result of the criminal act of the defendant, the court shall order restitution as provided in this Section. In all other cases, except cases in which restitution is required under this Section, the court must at the sentence hearing determine whether restitution is an appropriate sentence to be imposed on each defendant convicted of an offense." (Emphasis added.) 730 ILCS 5/5—5—6 (West 2006).

See also *People v. Hasprey*, 194 Ill. 2d 84, 86 (2000) (section 5—5—6 applies to restitution for violations only of the Criminal Code, not the Illinois Vehicle Code).

We disagree with the State that section 5—5—6 of the Unified Code of Corrections applies. In its statement of the terms of the plea agreement, the State recited: "And the sentence to count [III], would be, *to the aggravated DUI*, 48 months probation *** [and] $2,700 restitution to the Oregon Fire Department, *** and that would be pursuant to statute as to the emergency response to the scene."

(Emphasis added.) The record shows that the $2,700 was imposed as a condition of probation on the Illinois Vehicle Code conviction, not the Criminal Code conviction. Moreover, the State's specification that the $2,700 was for a public agency for an emergency response parallels the specific language in section 11—501(m) of the Illinois Vehicle Code, rather than the general language regarding restitution in section 5—5—6 of the Unified Code of Corrections. Because the restitution to the Oregon Fire Department was imposed pursuant to section 11—501(m), the amount of restitution cannot exceed $1,000.

Accordingly, we reduce defendant's restitution obligation to the statutorily-permissible amount of $1,000.

### 3. Medical Costs Fee

■ Defendant contends next that his $10 "Medical Costs" fee pursuant to section 17 (730 ILCS 125/17 (West 2006)), of the County Jail Act was improper as to his aggravated DUI conviction. Section 17 states, in relevant part, that "[t]he county shall be entitled to a $10 fee for each conviction or order of supervision for a *criminal violation*, other than a petty offense or business offense." (Emphasis added.) 730 ILCS 125/17 (West 2006). Defendant argues that his aggravated DUI conviction was not for a "criminal violation" and that therefore imposition of the $10 fee was improper. Defendant notes that aggravated DUI is not part of the Criminal Code of 1961. *Hasprey*, 194 Ill. 2d at 86.

The State concedes that aggravated DUI is not found in the Criminal Code of 1961, but contends that aggravated DUI is nevertheless a "criminal violation" within the meaning of the County Jail Act. We agree that the County Jail Act's use of the term "criminal violation" is not necessarily a technical invocation of the Criminal Code of 1961. The purpose of section 17 of the County Jail Act is to require the warden of a jail to furnish the necessary bedding, clothing, fuel, and medical aid to all of the prisoners under his or her watch. 730 ILCS 125/17 (West 2006). One of the ways that the medical expenses are funded is through the collection of a $10 fee from each offender convicted of a "criminal violation." 730 ILCS 125/17 (West 2006).

Here, defendant was convicted under section 11—501(d)(1)(F) of the Illinois Vehicle Code of aggravated DUI, which was a Class 2 felony due to his prior convictions. 625 ILCS 5/11—501(d)(1)(F) (West 2004). Defendant ultimately received 10 years' imprisonment under the Unified Code of Corrections for this offense. During his time in prison, defendant will undoubtably be drawing from the funds set aside to provide for his and other prisoners' bedding, clothing, fuel, and medical aid. While section 17 of the County Jail Act expressly excuses from

contributing to the fund those who have committed relatively minor offenses, excusing defendant upon conviction of a Class 2 felony does not seem in keeping with the goals of that provision. 730 ILCS 125/17 (West 2006). Defendant's $10 "Medical Costs" fee as to the aggravated DUI was not improper.

### 4. Violent Crime Victims Assistance Act

■ Finally, we consider defendant's challenge to the imposition of the $20 fines for the Violent Crime Victims Assistance Fund (725 ILCS 240/10(c) (West 2006)). Defendant contends the fines were improper because they were improperly imposed by the circuit court clerk and not by the trial court.

Section 10(c)(2) of the Violent Crime Victims Assistance Act provides, in relevant part:

> "(c) When any person is convicted *** of an offense listed below *** *and no other fine is imposed,* the following penalty shall be collected by the Circuit Court Clerk:
>
> * * *
>
> (2) $20, for any other felony or misdemeanor ***." (Emphasis added.) 725 ILCS 240/10(c)(2) (West 2006).

We need not reach defendant's argument. As we previously noted, the $20 Crime Stoppers charges imposed in this case constituted fines. Therefore, defendant should not have been assessed the additional $20 fines for the Violent Crime Victims Assistance Fund. See *People v. Morrison*, 375 Ill. App. 3d 545, 553 (2007) (vacating $20 Violent Crime Victims Assistance Fund fine where a drug assessment imposed on the defendant constituted a fine); *People v. Duff*, 374 Ill. App. 3d 599, 607 (2007) (same). Accordingly, we vacate the fines for the Violent Crime Victims Assistance Fund.

### III. CONCLUSION

For the aforementioned reasons, we remand the case for a new sentencing hearing as to the aggravated DUI. We direct that defendant's sentence for reckless homicide be reduced to a five-year prison term followed by one year of MSR. We further direct the mittimus to be changed to (1) reflect that defendant has satisfied his obligations in regard to the Crime Stoppers fines, (2) reset defendant's restitution obligation imposed pursuant to section 11—501(m) of the Illinois Vehicle Code to $1,000, and (3) vacate defendant's fines in regard to the Violent Crime Victims Assistance Fund. We affirm the trial court's judgment in regard to the "Medical Costs" fee. The judg-

ment of the circuit court of Ogle County is affirmed in part and reversed in part; the cause is remanded with directions.

Affirmed in part and reversed in part; cause remanded with directions.

O'MALLEY and SCHOSTOK, JJ., concur.