NOTICE

Decision filed 04/22/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 190303-U

NO. 5-19-0303

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 16-CF-377 |
| | ) | |
| JOHN BROWN, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WHARTON delivered the judgment of the court.
Presiding Justice Boie and Justice Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Even though the trial court appeared to consider a factor inherent in the offense—the fact that the defendant's conduct threatened serious harm—as an aggravating factor in sentencing, reversal was not warranted because the court properly considered the degree of harm threatened. Where counsel failed to file a motion to withdraw the defendant's bond upon learning that the defendant was in custody on another charge, the defendant is entitled to credit against his sentence for the time he was in custody after counsel learned that he was returned to custody under this court's decision in *People v. DuPree*, 353 Ill. App. 3d 1037 (2004).

¶ 2    The defendant, John Brown, pled guilty but mentally ill to one count of aggravated arson. He now appeals his 20-year sentence, arguing that (1) the trial court improperly considered the threat of serious harm—a factor inherent in the offense—as an aggravating factor; and (2) trial counsel was ineffective for failing to file a motion to withdraw the defendant's bond when he was arrested on an unrelated charge and taken into custody. We affirm the defendant's sentence.

1

However, we remand this matter to the trial court with directions to amend the mittimus to reflect additional credit against his sentence.

¶ 3                              I. BACKGROUND

¶ 4      In September 2016, when the events at issue took place, the defendant shared a home with his girlfriend, Lisa Brink; their respective children; and Lisa's mother, Terrell Forth. Lisa Brink subsequently married the defendant and is now known as Lisa Brown. On September 21, 2016, the defendant told Lisa, Terrell, and the children to get out of the house because he was going to set it on fire. Before setting the fire, the defendant poured gasoline on the floor and on various items inside the house. He also poured gasoline on himself and Lisa. Terrell was initially reluctant to leave the house, and the defendant set the fire while she was still inside. All family members, including Terrell, were able to escape unharmed. However, their three cats died in the fire, and their house was destroyed.

¶ 5      The defendant was charged with aggravated arson, residential arson, and domestic battery. The aggravated arson charge was based on an allegation that the defendant set the fire knowing that Terrell was inside the house when he did so. See 720 ILCS 5/20-1.1(a)(1) (West 2014). In November 2017, the defendant pled guilty but mentally ill to aggravated arson in a negotiated plea agreement. In exchange for his plea, the State dismissed the other two charges as well as charges against the defendant in two other pending cases. However, there was no agreement as to the sentence to be imposed.

¶ 6      The court held a sentencing hearing in April 2018. The court heard the testimony of witnesses who described the defendant's conduct on the day of the fire and during two subsequent incidents. Lisa testified that the defendant had a lengthy history of mental illness, including bipolar disorder and abuse of drugs and alcohol. She explained that he used drugs and

2

alcohol "to self-medicate" due to his bipolar disorder. Lisa testified that she hoped the defendant would get help for these problems. Lisa testified that her mother, who was then 64 years old, and the defendant's daughter, Kaylee Brown, who was then 17, were present in the house when the fire started. Lisa further testified that her mother, Terrell, used a wheelchair and that she had difficulty walking due to a knee injury that occurred sometime after the fire. She noted, however, that Terrell did not use a wheelchair at the time of the incident. Defense counsel asked, "Did she get around well at that time?" Lisa replied, "Yeah, she did."

¶ 7 Mallory Adams was a Jefferson County 9-1-1 dispatcher at the time of the fire. Adams testified that both Lisa Brink and her mother both called 9-1-1. Adams testified that the mother initially refused to leave the house, but Adams was able to talk her into leaving. Recordings of the 9-1-1 calls were played for the court. During Lisa's call, she indicated that her mother was unable to get around well.

¶ 8 Corporal Jessica Callahan of the Mt. Vernon Police Department testified about a subsequent domestic dispute involving the defendant and Lisa. The incident occurred in July 2017, while the charges involved in this case remained pending. Callahan responded to a call involving the dispute. When she arrived, she saw that Lisa was crying and had blood on her face, head, and neck. Lisa told Callahan that the defendant became angry when Lisa told him that she was unhappy and that she wanted a divorce. (We note that the defendant and Lisa got married in April 2017, three months before the domestic dispute, and that they were still married as of the time of the sentencing hearing.) Callahan testified that Lisa told her that the defendant knocked over a lamp and struck her in the head, either with his hand or an object.

¶ 9 Captain Ryan Weeks of the Jefferson County Sheriff's Department testified about a vehicle pursuit involving the defendant, which occurred in August 2017. The pursuit was

3

initiated in response to reports that the defendant made comments suggesting he intended to commit "suicide by cop" and that he may have been armed. Weeks testified that speeds reached close to 100 miles per hour during the pursuit. He noted, however, that once the defendant pulled over, Weeks was able to arrest him without incident.

¶ 10    The court also considered a presentence investigation report, letters from members of the defendant's family, documentation related to the defendant's mental health, and the defendant's statement in allocution. In pertinent part, this evidence indicated that the defendant suffered from bipolar disorder and substance abuse disorders, that he experienced suicidal ideations, and that he had a lengthy criminal history, mostly related to his use of drugs and alcohol.

¶ 11    The State argued that the court should find the following factors in aggravation: (1) the defendant's conduct threatened to cause serious harm (730 ILCS 5/5-5-3.2(a)(1) (West 2016)); (2) the defendant had a lengthy criminal history (*id.* § 5-5-3.2(a)(3)); (3) there is a need to deter others (*id.* § 5-5-3.2(a)(7)); (4) the crime was committed against a person who was 60 years of age or older (*id.* § 5-5-3.2(a)(8)); (5) the crime was committed against a person with a physical disability (*id.* § 5-5-3.2(a)(9)); and (6) the crime was committed while the defendant was on bond (*id.* § 5-5-3.2(a)(12)). In arguing that the defendant's conduct threatened serious harm, the prosecutor emphasized that the defendant started the fire while people were inside the house, including children, and that he poured gasoline on his wife-to-be. The prosecutor argued, "It could have been a lot worse." The State asked for a sentence of 25 years in prison.

¶ 12    Defense counsel acknowledged that the defendant's conduct threatened serious harm and that he had a lengthy criminal history. Counsel argued, however, that Terrell Forth was a witness to the crime, rather than a victim. Counsel further argued that three factors in mitigation were present. First, the defendant did not contemplate that his conduct would cause serious physical

harm (*id.* § 5-5-3.1(a)(2)). Counsel argued that the fact that the defendant told people to leave the house showed that he did not want to harm anyone other than himself. Second, counsel argued that the defendant's mental illness constituted a factor tending to justify his conduct even though it did not establish a defense (*id.* § 5-5-3.1(a)(4)). Third, counsel argued that the defendant acted under strong provocation because he was suicidal at the time (*id.* § 5-5-3.1(a)(3)). Counsel acknowledged, however, that this factor may not be applicable because the legislature may not have intended it to include suicidal feelings. Defense counsel urged the court to impose a sentence of six to eight years.

¶ 13    In ruling from the bench, the court found that no statutory factors in mitigation were present. In rejecting the defendant's claim that he did not contemplate that his conduct would cause serious harm, the court explained that the defendant's conduct was "pretty extreme."

¶ 14    The court then turned its attention to factors in aggravation. The court found that the following factors in aggravation applied: (1) the defendant's conduct threatened to cause serious harm (*id*. § 5-5-3.2(a)(1)); (2) the defendant had a lengthy criminal history (*id.* § 5-5-3.2(a)(3)); (3) there is a need to deter others (*id.* § 5-5-3.2(a)(7)); (4) the crime was committed against a person who was 60 years of age or older (*id.* § 5-5-3.2(a)(8)); and (5) the crime was committed while the defendant was on bond (*id.* § 5-5-3.2(a)(12)).

¶ 15    In discussing its finding that the defendant's conduct threatened to cause serious harm, the court stated, "That's an understatement of the year. His conduct in this offense was just about as extreme as it gets without actually hurting someone." Addressing the defendant, the court further noted, "The 9-1-1 calls are terrifying and do, I think, reveal the absolute horror that was caused by your act, Mr. Brown, when you did that." Finally, the court noted that the vehicle pursuit that occurred while this matter was pending likewise put others at risk. The court

5

described the defendant's behavior during that pursuit as "extremely dangerous" conduct that was "pretty much without comparison in what we normally see." The court imposed a sentence of 20 years.

¶ 16 The defendant filed a timely appeal to this court. However, because the defendant's motion to vacate and reconsider his sentence was not accompanied by a certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017), we remanded the matter to the trial court to allow counsel to fully comply with that rule. The court appointed a new attorney to represent the defendant. New counsel filed another motion to vacate and reconsider the defendant's sentence, accompanied by a Rule 604(d) certificate. The court held a hearing on that motion in July 2019. The arguments raised in both the written motion and at the hearing were essentially identical to those raised by the defendant's original attorney. The court again denied the motion. This appeal followed.

¶ 17                                    II. ANALYSIS

¶ 18                          A. Improper Sentencing Factor

¶ 19 The defendant first argues that the trial court improperly considered a factor inherent in the offense of aggravated arson as a factor in aggravation. Specifically, he contends that the court should not have considered the fact that his conduct threatened serious harm because the threat of harm is inherent in the offense of aggravated arson as charged. See 720 ILCS 5/20-1.1(a)(1) (West 2014). The defendant acknowledges that counsel forfeited this claim by failing to object to the court's consideration of this factor and by conceding that it was applicable. However, he urges us to consider his claim either as plain error or ineffective assistance of counsel. We note that forfeiture is a limitation on the parties, not the court. We may overlook a defendant's forfeiture of an issue where it is necessary to do so to obtain a just result. *People v. Holmes*, 2016

6

IL App (1st) 132357, ¶ 65. As we will explain later, consideration of a factor inherent in the offense as an aggravating factor involves a "double enhancement" of a defendant's sentence. See *People v. Phelps*, 211 Ill. 2d 1, 12 (2004); *People v. Bunning*, 2018 IL App (5th) 150114, ¶ 15. In light of this serious concern, we choose to address the defendant's contentions.

¶ 20    Before addressing the merits of the defendant's claim, however, we must address the State's argument that the threat of serious harm is not a factor inherent in the offense of aggravated arson as charged. The State points out that the subsection under which the defendant was charged expressly requires only the presence of other people in the building when the arson occurs. See 720 ILCS 5/20-1.1(a)(1) (West 2014). We are not persuaded. We believe the potential harm to people who are present in the building is implicit in the offense. See *People v. Abdelhadi*, 2012 IL App (2d) 11053, ¶ 18 (finding that the trial court improperly considered the threat of harm as an aggravating factor in sentencing a defendant on a charge of aggravated arson). We must therefore consider whether the trial court considered this factor and, if so, whether the court's consideration of this factor requires reversal.

¶ 21    In sentencing a defendant, a trial court must not consider a factor that is inherent in the offense as an aggravating factor. *People v. Morrow*, 2014 IL App (2d) 130718, ¶ 13. "Stated differently, a single factor cannot be used both as an element of an offense and as a basis for imposing 'a harsher sentence than might otherwise have been imposed.' " *Id.* (quoting *People v. Gonzalez*, 151 Ill. 2d 79, 83-84 (1992)). Such "double enhancements" are improper because we assume that the legislature took into account factors inherent in the offense in determining the appropriate sentencing range. *Id.*

¶ 22    In determining whether the trial court considered an improper factor in aggravation, we must consider the record in its entirety and not focus on isolated statements by the court. *Id.* ¶ 14.

7

We must presume that the trial court employed sound legal reasoning in its sentencing decisions. *Id*. Thus, it is the defendant's burden to demonstrate that his sentence was based on an improper factor. *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). Our review is *de novo*. *Morrow*, 2014 IL App (2d) 130718, ¶ 14.

¶ 23    Here, we find that the court did consider the threat of harm as a factor in aggravation. The court specifically stated that it found this factor to be present after being asked by the prosecution to make this finding. The question, then, is whether we must remand this case to the trial court for resentencing.

¶ 24    Where a trial court considers an improper sentencing factor in aggravation, remand is required unless it appears from the record that the court placed such insignificant weight on the improper factor that we can conclude that the factor did not result in a harsher sentence. *Dowding*, 388 Ill. App. 3d at 945. In deciding whether remand is necessary, we consider (1) whether the trial court's comments regarding the improper factor were dismissive or emphatic, and (2) whether the sentence imposed was substantially lower than the statutory maximum sentence for the offense. *Id.*

¶ 25    The offense in this case—aggravated arson—is a Class X felony. 720 ILCS 5/20-1.1(b) (West 2016). The sentencing range is therefore 6 to 30 years. 730 ILCS 5/5-4.5-25(a) (West 2016). The defendant's 20-year sentence is substantially lower than the 30-year maximum. Because the court found several other factors in aggravation and no factors in mitigation, this suggests that the court did not place significant weight on the improper factor. On the other hand, the court discussed the threat of harm that could have resulted from the defendant's conduct far more than it discussed the other factors in aggravation that it found to be present. While it is not

8

apparent from the record how much weight the court gave to the improper factor, we find that remand is unnecessary for a different reason.

¶ 26   Although a court may not consider as a factor in aggravation the mere fact that the defendant's conduct caused or threatened harm where that factor is inherent in the offense, the court *may* consider the *degree* of harm threatened by the defendant's conduct. *Dowding*, 388 Ill. App. 3d at 943. As the Illinois Supreme Court has explained:

> "Sound public policy demands that a defendant's sentence be varied in accordance with the particular circumstances of the criminal offense committed. Certain criminal conduct may warrant a harsher penalty than other conduct, even though both are technically punishable under the same statute. Likewise, the commission of any offense, regardless of whether the offense itself deals with harm, can have varying degrees of harm or threatened harm. The legislature clearly and unequivocally intended that this varying quantum of harm may constitute an aggravating factor." *People v. Saldivar*, 113 Ill. 2d 256, 269 (1986).

Viewing the court's comments in context, we believe it is apparent that the court properly considered the degree of harm threatened by the defendant's conduct.

¶ 27   As we discussed earlier, the court stated that the defendant's conduct in committing the offense at issue in this case was "as extreme as it gets without actually hurting someone," and that the 9-1-1 calls revealed the "absolute horror" experienced by the defendant's family members while the defendant was threatening to set the fire. These comments indicate that the court was considering the degree of harm threatened by the defendant's conduct, not merely the fact that his conduct threatened harm.

¶ 28 It is also worth emphasizing that the court considered the extremity of the defendant's conduct both in this incident and in the subsequent incident involving a high-speed car chase. The court found that the defendant's conduct during that car chase was "pretty much without comparison" to the type of conduct normally seen. This lends further support to our conclusion that the court was focused on the degree of harm threatened by the defendant's conduct. Moreover, it indicates that the court was also considering the future dangerousness of the defendant's conduct in light of his extreme conduct in both the arson and the car chase. The need to protect the public is a proper consideration in sentencing. *Morrow*, 2014 IL App (2d) 130718, ¶ 12. For these reasons, we find it unnecessary to remand this matter for a new sentencing hearing.

¶ 29 B. Calculation of Sentence Credit

¶ 30 The defendant's next argument concerns the calculation of the credit against his sentence for time spent in custody prior to sentencing. At issue is time spent in custody after the defendant was arrested on other charges.

¶ 31 A defendant is entitled to credit against his sentence for every day spent in custody prior to sentencing. 730 ILCS 5/5-4.5-100 (West 2016). The right to receive this credit is not subject to procedural forfeiture. *DuPree*, 353 Ill. App. 3d at 1045. However, if a defendant is out on bond on one charge and is arrested and returned to custody on a second charge, he is not considered to be "in custody" on the first charge unless and until his bond on that charge is withdrawn or revoked. *People v. Arnhold*, 115 Ill. 2d 379, 383 (1987).

¶ 32 The defendant argues that his attorney provided ineffective assistance by failing to move to withdraw his bond in this case when he was taken into custody in connection with unrelated incidents in August 2017. He contends that, had counsel done so, he would have been deemed to

10

be in simultaneous custody on both charges at that time. See *People v. Robinson*, 172 Ill. 2d 452, 459-60 (1996). As a result, the defendant asserts, he would have been entitled to more credit than he received.

¶ 33    Although the State argues that the record is not complete enough to allow this court to evaluate counsel's performance, the State concedes that the defendant is entitled to additional sentence credit under this court's decision in *DuPree*. However, while the defendant argues that he is entitled to 246 days of credit against his sentence, the State argues that he is entitled to only 208 days. Before resolving these contentions, we must set forth the relevant timeline.

¶ 34    On September 22, 2016, the day after the fire, the defendant was arrested and taken into custody on the charges involved in this case. On November 22, 2016, he posted bond in this case and was released from custody. We note that the defendant has received credit against his sentence for this period, and it is not at issue in this appeal.

¶ 35    The defendant was subsequently charged with aggravated domestic battery in connection with the July 2017 incident described by Corporal Callahan at the sentencing hearing in this case and with aggravated fleeing and eluding in connection with the August 2017 incident described by Captain Weeks. According to Captain Weeks's testimony, the defendant was taken into custody on August 16. On August 21, 2017, the State filed a motion to increase the defendant's bond in this case. On September 6, while that motion remained pending, the State filed a motion to revoke the defendant's bond in this case.

¶ 36    The court and counsel addressed these motions at a hearing on September 12, 2017. The State argued that the defendant's $50,000 bond in this case was not sufficient to protect the community from the defendant, while the defendant argued that the bonds in all three cases were adequate for that purpose. The court then asked both attorneys what would happen to the bond

11

posted in the instant case if the court revoked it. Although they did not arrive at a definitive answer, defense counsel argued that the money posted as bond should be returned to the person who posted it on the defendant's behalf. The court took the matter under advisement.

¶ 37     The court denied the State's motion to revoke the defendant's bond in a September 20, 2017, docket entry. However, in a September 22 order, the court increased the defendant's bond from $50,000 to $100,000. The defendant pled guilty but mentally ill on November 7, 2017, and was sentenced on April 19, 2018. He remained in custody from his August 16, 2017, arrest until he was sentenced.

¶ 38     The defendant argues that, under this court's decision in *DuPree*, he is entitled to credit against his sentence for the entire time he was returned to custody—from August 16, 2017, to April 19, 2018, a period of 246 days. Alternatively, he contends that he is at least entitled to 241 days of credit for time spent in custody from the day on which counsel became aware that he was in custody until he was sentenced. According to the defendant, counsel became aware of his return to custody on August 21, 2017, when the State filed a motion to increase his bond. The State, however, argues that under *DuPree*, the defendant is entitled to 208 days of credit for time spent in custody between September 22, 2017, when the court increased his bond in this case, and April 18, 2018, the day before he was sentenced. See *People v. Leggans*, 140 Ill. App. 3d 268, 271 (1986) (explaining that a defendant is not entitled to credit against his sentence for the day on which he was sentenced and remanded to the Department of Corrections).[1] Because our decision is controlled by *DuPree*, we turn our attention to that case.

¶ 39     The defendant in *DuPree* was arrested and taken into custody on the relevant charges in Jackson County on April 26, 2002. *DuPree*, 353 Ill. App. 3d at 1045. His trial was set for August

---

[1]We note that by our calculations, the defendant spent 209 days in custody between these two dates.

12

12. *Id*. at 1046-47. The defendant posted bond on July 18, and he was released from custody the following day. *Id.* at 1047. On August 7, he was arrested and taken into custody on an unrelated charge in Saline County. *Id.* On August 12, the date on which the defendant's trial was to begin in Jackson County, defense counsel appeared on his behalf. She informed the Jackson County court that the defendant was being held on other charges in Saline County, and she requested a continuance. *Id.* Pursuant to the State's request, the court increased the defendant's bond in the Jackson County case. *Id.* The court also issued a warrant for the defendant's arrest on the underlying charge in the Jackson County case. *Id.* at 1049. The court did not revoke the defendant's bond, and defense counsel did not move to withdraw the bond. *Id.* at 1046. On November 14, the defendant was transferred to the Jackson County jail. *Id.* at 1047-48.

¶ 40    On appeal, the defendant argued that he was entitled to credit against his sentence from August 12, 2002, the day his bond was increased, until May 1, 2003, the day he was sentenced. *Id.* at 1045-46. He did not argue that counsel was ineffective for failing to move to withdraw the bond. He argued only that he was entitled to the sentence credit because the court's order increasing his bond "effectively placed [him] back in custody." *Id.* at 1046. This court rejected this argument. *Id.* at 1048. However, we held that "the unique facts of [*DuPree*] militate[d] in favor of finding that the defendant [was] entitled to credit for his incarceration between August 12, 2002, and November 14, 2002." *Id.* at 1048-49. We explained that counsel knew defendant was in custody in Saline County when the Jackson County court increased his bond on August 12. We therefore found that counsel should have moved to withdraw the defendant's bond at that time, and we held that her failure to do so supported a finding that the defendant was entitled to the sentence credit. *Id.*

13

¶ 41 Under *DuPree*, the defendant is entitled to credit against his sentence beginning on the earliest date on which the record establishes that counsel knew or reasonably should have known the defendant was in custody on the 2017 charges. The record in this case indicates that a copy of the State's motion to increase the defendant's bond was served on defense counsel when that motion was filed on August 21, 2017. We note that although the record does not indicate the method of service used, we will give the defendant the benefit of the doubt and presume that counsel became aware that the defendant was back in custody by that date. This means the defendant is entitled to 241 additional days of credit against his sentence for time spent in custody prior to sentencing.

¶ 42                                    III. CONCLUSION

¶ 43 For the foregoing reasons, we affirm the defendant's sentence. However, we remand this matter to the trial court with directions to amend the mittimus to reflect 241 days of sentence credit.


¶ 44 Affirmed and remanded with directions.