2022 IL App (1st) 181963-U

No. 1-18-1963

Order filed September 27, 2022

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 14145 |
| | ) | |
| ERIK ANDERSON, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Howse and Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's convictions for first degree murder and mob action over his contentions that (1) he was not proven guilty beyond a reasonable doubt; (2) his convictions violate the one-act, one-crime rule; and (3) his sentence was improper.

¶ 2    Following a bench trial, defendant Erik Anderson was found guilty of three counts of first degree murder and one count of mob action. The trial court merged the first degree murder counts and imposed a 29-year prison term thereon concurrent to a 3-year term for mob action. On appeal, defendant first contends that he was not proven guilty of first degree murder beyond a reasonable

doubt when the State's case rested on "grainy" video footage. Second, he contends that his conviction for mob action must be vacated pursuant to the one-act, one-crime rule when it involves the same physical act as his conviction for first degree murder. Third, defendant challenges his sentence for first degree murder for relying on speculative evidence and being unconstitutionally disproportionate to a co-offender's sentence. We affirm.

¶ 3    Defendant was charged with three counts of first degree murder and one count of mob action arising from the death of Kimberly Schnackenberg on April 21, 2016.[1] Relevant here, count I alleged that defendant, without lawful justification, intentionally or knowingly "beat and killed" Schnackenberg. 720 ILCS 5/9-1(a)(1) (West 2016). Count IV alleged that defendant, along with one or more persons, acting together and without the authority of law, engaged in the knowing or reckless use of force or violence, disturbing the public peace. 720 ILCS 5/25-1(a)(1) (West 2016).

¶ 4    Daniel Gonzalez testified that late on April 21, 2016, he and a companion were walking to a liquor store when he noticed a body in the alley behind a coach house where he used to live on the 2000 block of West 51st Street in Chicago. When he turned the body, he recognized Schnackenberg's tattoos. Gonzalez had known Schnackenberg for six or seven years, and she moved into the coach house after he moved out. Gonzalez, who had been drinking alcohol and smoking marijuana, had his cell phone but did not immediately call the police because he had a warrant for violating probation.

¶ 5    At a police station sometime later, Gonzalez viewed two video clips including one depicting Schnackenberg's death. In both clips, Gonzalez recognized Eddie Howlett, whom he

---

[1] Co-offender Eddie Howlett was tried in a separate but simultaneous bench trial and is not a party to this appeal. We affirmed his conviction for first degree murder. See *People v. Howlett*, 2021 IL App (1st) 181010-U.

identified in court as "E," and purchased narcotics from "almost" daily. The State then published surveillance footage from the alley where Schnackenberg's body was discovered.[2] Gonzalez identified the coach house and Howlett, who wore a black short-sleeved shirt and stood beside a Grand Am. Gonzalez also identified Howlett, Schnackenberg, and two men he knew as "D" and "L" in photographs taken from the video.

¶ 6    This court has reviewed the surveillance footage from the alley. At approximately 19:33 per the timestamp, the footage depicts a truck followed by a light-colored vehicle, slowly driving through the alley. Five men exit the vehicles. One man, wearing a two-tone top and boots, enters a gate and then reemerges.[3] He looks around, urinates, and then points to the left. The four other men look and then everyone drives away. At 20:02, five men, including one in a two-tone jacket, enter and exit the frame.[4] Ultimately, three of the men, including the man in the two-tone jacket, position themselves behind a building. One man leans from behind the building to look into the alley. Two figures, identified at trial as Howlett and Schnackenberg, then enter the alley. Howlett punches Schnackenberg in the face. She falls and the three men emerge from behind the building. The man in the two-tone jacket swings a stick or club downward toward Schnackenberg, another man kicks her, and the group flees.[5]

---

[2] The State entered stipulations to the foundation for videos from several cameras at or near the scene of the offense, and a separate exhibit containing a compilation of clips from these videos. These videos, taken the night of the offense, were admitted and published throughout the trial and are included in the record on appeal.

[3] The top is dark above the shoulders and lighter below the shoulders and on the sleeves, which have elbow patches.

[4] The jacket has light sleeves and a dark bodice.

[5] The fourth man, wearing light-colored trousers, stands to the side during the incident.

¶ 7 The State entered stipulations that Schnackenberg's roommate, Willie Evans, would testify that he found her body in a pool of blood in the alley at 1:29 a.m. on April 22, 2016, and called 911. Dr. Matthew Fox would testify that he performed Schnackenberg's autopsy and determined the cause of death was craniocerebral blunt force injuries due to multiple impacts to the head, and the manner of death was homicide. Besides the "devastating injuries to the skull and brain," Dr. Fox also found blunt force injuries to Schnackenberg's upper extremities and left thigh.

¶ 8 Chicago police officer Kevin Killen testified that Schnackenberg, who worked as a confidential informant for four years, stated that Howlett sold narcotics at a certain address. At trial, Killen recognized Howlett, whom he encountered during a narcotics investigation in October 2015. Following Schnackenberg's death, Killen spoke to detectives, viewed a video of the beating, and identified Howlett as the person who punched Schnackenberg. Killen did not recognize defendant in court.

¶ 9 Chicago police detective Andrew Burns Jr. testified that he reviewed surveillance footage from a home on the alley and nearby businesses. Certain vehicles at the rear of Schnackenberg's residence also appeared in footage from other locations. Burns compiled the footage chronologically. The State published the compiled footage, which Burns narrated in court as follows.

¶ 10 In the footage, a black Yukon SUV and Grand Am turn from 51st Street onto Hoyne and enter an alley. The Grand Am stops at Schnackenberg's residence. The driver of the black Yukon SUV had "patches on his shirt." The vehicles then exit the alley. Later footage shows four individuals walk out of an alley, followed by another individual carrying what Burns described as a baseball bat over the right shoulder. The group, including the man wearing a "two-tone" jacket

and gold boots, then returns to the alley where the offense occurred. Burns noted that at one point, the man's jacket is open and displays his shirt and chain. In later footage, taken at liquor store, the man is wearing the chain but not his jacket.

¶ 11    This court has reviewed this footage, which is included in the record on appeal. In relevant part, the footage depicts a man in a two-tone jacket walking with the top of a bat visible.[6] Additional footage from the liquor store depicts a man in a two-tone top and a gold chain. A man with a ponytail buys this person water, and then they leave.

¶ 12    On May 21, 2016, Burns interviewed defendant, who was wearing gold boots and a gold chain. Defendant viewed photographs taken from surveillance footage in the alley and the liquor store and identified himself in one photo and his black SUV in another. At trial, Burns identified the photographs shown to defendant.

¶ 13    These photographs were admitted and are included in the record on appeal. One photograph depicts two vehicles in the alley and another depicts five men standing around the same vehicles in the alley. Additional photographs from the liquor store footage depict a man in a gray sweater with black elbow patches.

¶ 14    In a videotaped interview, defendant initially denied knowing Howlett. Then, defendant stated that he met Howlett for the first time on the day of the offense. Defendant identified himself and his vehicle in the alley and explained that he was being "nosy."

¶ 15    During cross-examination, Burns disagreed that the footage was consistent with defendant's explanation for his presence in the alley. Burns spoke to defendant again after the footage from various businesses had been compiled. In the footage, Burns recognized defendant

---

[6] The jacket in this video has light sleeves and a dark bodice.

with "his jacket open." Burns observed defendant's face in the liquor store video. In other footage, Burns observed an individual with facial features, "style," shoes, and clothing which matched the person in the liquor store. Burns testified that the man in the alley wearing a dark jacket with white patches carried a baseball bat behind the right shoulder, and that it was unclear what this person was wearing under the jacket. Defendant was arrested in August 2016.

¶ 16 Chicago police detective Daniel Kienzle testified that he recovered Schnackenberg's cellphone on April 22, 2016, and reviewed its messages. In court, he identified three photographs. The first showed the phone's contact list, which included an individual named "E" and listed his phone number as (561) ***-***4. The other photographs showed a text message received by Schnackenberg from E on April 21 at 7:51 p.m., approximately 15 minutes before her death.

¶ 17 Kienzle viewed footage from the crime scene and therein observed vehicles in the alley. On April 22, 2016, he located two vehicles, which appeared to be those in the video, parked near each other on the 5100 block of South Winchester. The two vehicles were a black GMC Yukon with license plate number E6***6 and a silver Pontiac Grand Am with the license plate Y8***4. On April 28, 2016, Kienzle showed Killen footage of the incident, and Killen identified Howlett. Kienzle then showed Killen a photograph of Howlett, and Killen again identified him. On August 19, 2016, Kienzle interviewed defendant.

¶ 18 The State admitted vehicle records showing that a 2005 GMC with the license plate of E6***6 was registered to defendant.

¶ 19 The State then published the video of defendant's August 19, 2016, interview, which this court has viewed. In the recording, defendant states that he does "not [know] much" about Schnackenberg's death. He was in the alley because he was "nosy" about a shooting that previously

occurred in the alley. After leaving the alley, he went to a cousin's house. He denies being in the alley a second time and knowing Howlett; rather, he met Howlett that day. Defendant identifies himself in stills taken from the alley surveillance footage and the liquor store footage.

¶ 20    Kienzle testified that defendant viewed photographs of the alley taken from footage captured approximately 15 minutes before the murder and identified himself, his "truck," and a Grand Am belonging to his cousin Demetrius Jones. One of the photographs in which defendant identified himself depicted defendant "five feet from the murder scene" and Howlett standing "about ten feet away" from defendant. Defendant also identified himself in stills taken from footage at the liquor store about 30 minutes after the murder with his cousin Tyrell Jones. Defendant initially denied being with Howlett, but later identified Howlett and stated they met that day. Defendant was present with Howlett in the store after the incident. During the interview, defendant mentioned a shooting. During the course of the investigation, Kienzle learned that an individual named Donnell Coleman suffered a gunshot wound to the arm while in the alley, and that defendant and Howlett both stated they were in the alley because of the shooting.

¶ 21    Kienzle identified photographs taken from the surveillance footage in the alley before the murder in which defendant identified himself with Howlett and others, as well as defendant's GMC Yukon. Defendant was to the left, wearing a "two-toned sweater with patches on the elbow and shoulders." Defendant also identified a Yukon depicted in a photograph taken from the surveillance footage of the alley as his vehicle. Kienzle identified a photograph from the store surveillance system depicting defendant in a "two-toned sweater," wearing a gold chain and earring. Howlett is also present.

¶ 22　During cross-examination, Kienzle testified that he did not review surveillance video to determine whether Coleman was actually shot in the alley. Defendant only identified himself in the specific videos and stills depicting the group congregating in the alley before Schnackenberg's death and in the store after Schnackenberg's death. Defendant initially denied knowing Howlett, but after being confronted with a photograph depicting him standing with Howlett, defendant stated that he met Howlett that day. Defendant acknowledged that he and Howlett were physically present in the store, but defendant stated that he was with someone else.

¶ 23　In closing argument, the State asserted that defendant admitted to being in the alley. Moreover, according to the State, the video depicted the person in a "distinctive *** letterman sweater" with dark sides and lighter sleeves beat Schnackenberg with a bat after Howell "started it all" by punching her. The State noted defendant's "distinct clothing" before and after the incident and the jacket he wore "during the homicide."

¶ 24　The defense responded that in the video of the "actual beating," the viewer could not see down the alley, and therefore, could not say that defendant was involved. Defense counsel admitted that defendant was present and "snooping around," but denied that defendant planned a later beating.

¶ 25　In rebuttal, the State argued that defendant only denied knowing Howlett because they "just killed a woman down the street." The State acknowledged it was "convenient" that defendant placed himself in the area "right before" and "after" the incident, and admitted that the case was not "clear-cut" upon a first viewing of the video of the beating. Viewing the videos together, however, established that these were not the "wrong guys."

¶ 26    The trial court found defendant guilty of first degree murder and mob action. The court found "no question" that the videos showed the "same guys" lurking around the alley, returning, killing Schnackenberg, and then walking away. Schnackenberg was "slaughtered" when Howlett "sucker punched" her and defendant repeatedly "smash[ed]" her with a baseball bat, and the two men acted "in concert."

¶ 27    Defendant filed a motion and amended motion for a new trial. At a hearing, trial counsel argued that it was "impossible" to conclude that defendant was on the video because a viewer could not see the person's face, only a coat with light-colored sleeves. While counsel acknowledged this "two-toned" sweater resembled clothing defendant wore approximately 20 minutes later, defendant did not identify himself as the person with the white-sleeved jacket in the alley prior to or during the offense. The State responded that defendant put on a jacket when he went "to do the murder," but the clothes underneath, as well as the shoes, the necklace, and the "build size," were the same "throughout the videos." The trial court denied defendant a new trial.

¶ 28    Defendant's presentence investigation (PSI) report listed a prior conviction for aggravated unlawful use of a weapon. Defendant, who was born in December 1984, reported a close relationship with his mother and a happy childhood, but his father was not active in his life. Defendant completed high school and was previously employed.

¶ 29    At sentencing, the State argued that defendant caused the most harm to Schnackenberg when, in addition to his "overpowering size," he wielded a baseball bat and had the help of four other people. The defense responded that other than a prior conviction, "which probably is eligible to become a misdemeanor under *Aguilar*," defendant had no criminal background. Additionally, defendant had a work history and came from a "decent" family. Although trial counsel reiterated

that defendant was not present during the offense, even accepting the State's theory of the case, the beating was "orchestrated" by Howlett and others and defendant was "following orders." Trial counsel asked that defendant receive the same sentence as Howlett.

¶ 30    The trial court agreed that defendant "hardly" had a criminal history, but stated that this case was "extremely violent." Defendant and others, "like a pack of wolves," sought Schnackenberg because she might have had some involvement with another incident. Based on the evidence, defendant "did all the heavy lifting" and "struck the fatal blows." The court concluded that the case called for more than a minimum sentence, merged the murder counts, and imposed 29 years in prison for first degree murder under count I. The court also imposed a concurrent three-year sentence for mob action. Defendant filed a motion to reconsider sentence, which was denied.

¶ 31    On appeal, defendant first contends that he was not proven guilty beyond a reasonable doubt when the State relied "almost exclusively" on "grainy" video footage and no eyewitnesses, physical evidence, or inculpatory statements linked him to the offense.

¶ 32    Initially, defendant asserts that the trial court's findings based on the video evidence are not entitled to deference because "trial courts do not occupy a position superior to the appellate courts in evaluating evidence that is not live testimony." See, *e.g*., *People v. Shaw*, 2015 IL App (1st) 123157, ¶ 29 (the appellate court "give[s] less deference to a trial court's determinations of fact when they are based on evidence other than live witness testimony"). The State, relying on *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), and *People v. Harris*, 2018 IL 121932, ¶ 26, maintains that all the evidence must be viewed in the light most favorable to the State.

¶ 33    In this case, the evidence included videos but also testimony about their content and the identities of the individuals depicted. The trial court was required to evaluate the credibility of the witnesses and weigh their testimony, and the standard of review articulated in *Jackson* and its progeny therefore applies.

¶ 34    Where a defendant challenges the sufficiency of the evidence against him, this court asks whether, after reviewing the evidence in the light most favorable to the State, " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.)  *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson*, 443 U.S. at 319). "This standard of review applies in all criminal cases, whether the evidence is direct or circumstantial," and circumstantial evidence that meets this standard is sufficient to support a criminal conviction. *People v. Jackson*, 2020 IL 124112, ¶ 64.

¶ 35    The trier of fact is responsible for determining the witnesses' credibility, weighing their testimony, resolving conflicts in the evidence, and drawing all reasonable inferences from the evidence. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). We will not substitute our judgment regarding the weight of the evidence or the credibility of the witnesses. *People v. Brown*, 2013 IL 114196, ¶ 48. The appellate court "must allow all reasonable inferences from the record in favor of the prosecution.*" People v. Davison*, 233 Ill. 2d 30, 43 (2009). We will not reverse a criminal conviction unless the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Newton*, 2018 IL 122958, ¶ 24.

¶ 36    A defendant commits first degree murder if, in performing the acts that cause a death, he intends to kill or do great bodily harm to the victim, or knows that such acts will cause the victim's death. 720 ILCS 5/9-1(a)(1) (West 2016). To sustain the charge of mob action, the State had to

prove that defendant, along with one or more persons, acting together and without the authority of law, engaged in the knowing or reckless use of force or violence, disturbing the public peace. See 720 ILCS 5/25-1(a)(1) (West 2016). Defendant does not challenge the evidence supporting the elements of the offenses, but rather, his identification as an offender.

¶ 37    The prosecution has the burden to prove beyond a reasonable doubt the identity of the person who committed the crime. *People v. Slim*, 127 Ill. 2d 302, 307 (1989). Although an identification cannot sustain a conviction if it is vague or doubtful (*id.*), "[t]he reliability of a witness's identification of a defendant is a question for the trier of fact" (*In re Keith C.*, 378 Ill. App. 3d 252, 258, (2007)).

¶ 38    In *People v. Thompson*, 2016 IL 118667, our supreme court explained that a trier of fact can consider a lay witness's opinion testimony identifying another individual in a photograph or surveillance recording where the testimony is rationally based on the perception of the witness and helpful to determining a fact at issue. *Thompson*, 2016 IL 118667, ¶¶ 50, 54. Relevant factors include the witness's overall familiarity with the defendant; the witness's familiarity with the defendant's appearance when the recording was created; "whether the defendant was disguised in the recording or changed his/her appearance between the time of the recording and trial"; and "the clarity of the recording and extent to which the individual is depicted." *Id.* ¶ 51. Although the supreme court listed these factors in considering the admissibility of identification testimony, they provide some guidance for evaluating the challenge to the sufficiency of the identification testimony in the case at bar. See, *e.g.*, *People v. Murray*, 2019 IL 123289, ¶¶ 32-34 (finding that decisions analyzing the admissibility of expert opinion testimony were "instructive" in considering whether such testimony was sufficient to support a conviction).

¶ 39    Here, the evidence established that Schnackenberg died from craniocerebral blunt force injuries due to multiple impacts to the head. Footage depicts Schnackenberg walking into an alley with a man identified at trial as Howlett. Howlett punches Schnackenberg in the head and she falls to the ground. Other men approach. One hits her with a baseball bat and another kicks her. Defendant does not dispute the events depicted in this footage, but contends that its quality is such that the offenders cannot be "clearly identified."

¶ 40    Taking the evidence in the light most favorable to the State, a rational trier of fact could have found that defendant was the man with the baseball bat. Although defendant did not make an inculpatory statement to the police, he identified photographs of himself wearing a two-tone sweater and his vehicle in the alley shortly before the offense. He also identified himself wearing a two-tone sweater in photographs taken at a nearby liquor store shortly after the offense. Defendant initially denied knowing Howlett, but later stated that they met for the first time on the day of the offense and acknowledged that they were in the liquor store together.

¶ 41    Moreover, Detective Burns testified that he reviewed footage depicting the alley before and during the offense, as well as footage from nearby businesses. Burns stated that in photographs from the alley prior to the offense, defendant identified himself wearing a shirt with patches and his SUV. According to Burns, later footage showed the man with the baseball bat wearing an open two-tone jacket, which displayed the underlying shirt and a gold chain. Footage from the liquor store, which showed defendant's face, depicted him wearing the chain but not the jacket. Burns concluded, based upon his review of all the footage, including the liquor store footage showing defendant's face, that defendant was the person with the open jacket. Burns explained that the facial features, shoes, and clothing matched defendant and his outfit in the liquor store.

¶ 42    While defendant contends that Burns's testimony lacks "sufficient indicia of trustworthiness" due to his unfamiliarity with defendant, the trial court observed Burns testify, viewed the footage, and found Burns credible. See *Ortiz*, 196 Ill. 2d at 259. We decline to substitute our judgment for the trial court's regarding witness credibility. See *Brown*, 2013 IL 114196, ¶ 48. Although defendant told officers his presence in the alley related to a prior shooting and denied returning to the alley, there is no requirement that the trial court accept a defendant's version of events. See *People v. Jacobs*, 2016 IL App (1st) 133881, ¶ 53.

¶ 43    While the State did not present eyewitnesses or physical evidence linking defendant to the offenses, "[p]roof of physical evidence connecting a defendant to a crime has never been required to establish guilt." *People v. Williams*, 182 Ill. 2d 171, 192 (1998). In cases resting on circumstantial evidence, a factfinder "need not *** be satisfied beyond a reasonable doubt as to each link in the chain of circumstances"; rather, "[i]t is sufficient if all of the evidence taken together satisfies the trier of fact beyond a reasonable doubt of the defendant's guilt." *People v. Hall*, 194 Ill. 2d 305, 330 (2000). Moreover, the trier of fact is "not required to disregard inferences which flow normally from the evidence before it," or "search out all possible explanations consistent" with a defendant's innocence and raise them to the level of reasonable doubt. *In re Jonathon C.B.*, 2011 IL 107750, ¶ 60.

¶ 44    In sum, defendant placed himself in the alley with Howlett before the offense and in a liquor store with Howlett immediately following it. Howlett was identified in the footage depicting the offense, and defendant's clothing and jewelry, as seen in footage taken from the alley and the liquor store, matched that of the man with the baseball bat. We reverse a defendant's conviction only when the evidence is so unreasonable, improbable, or unsatisfactory that reasonable doubt of

his guilt remains (*Newton*, 2018 IL 122958, ¶ 24); this is not one of those cases. Accordingly, viewing the evidence in the light most favorable to the State, we cannot say that no rational trier of fact could have found that defendant struck Schnackenberg with a baseball bat as the group beat her. Defendant's convictions for first degree murder and mob action are therefore affirmed.

¶ 45    Defendant next contends that his conviction for mob action must be vacated pursuant to the one-act, one-crime rule because it is based upon the same conduct as his conviction for first degree murder, namely, the "beating" of Schnackenberg. Defendant acknowledges he failed to preserve this issue by not raising it before the trial court. However, he asks this court to review his claim for plain error.

¶ 46    Under the plain error doctrine, we may review unpreserved error when an error occurred and either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant," or (2) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." (Internal quotation marks omitted.) *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). A violation of the one-act, one-crime rule constitutes second-prong plain error. *People v. Coats*, 2018 IL 121926, ¶ 10. The first step in plain error review is to determine whether an error occurred. See *People v. Hood*, 2016 IL 118581, ¶ 18 (without error, there can be no plain error). A defendant has the burden to establish plain error. See *Thompson*, 238 Ill. 2d at 613.

¶ 47    Pursuant to the one-act, one-crime doctrine, multiple convictions are improper if they are "based on precisely the same act." *In re Angel P.*, 2014 IL App (1st) 121749, ¶ 66. However, multiple convictions are proper "where a defendant has committed several acts, despite the interrelationship of those acts." *People v. King*, 66 Ill. 2d 551, 566 (1977). "[A]n 'act' is defined

as any overt or outward manifestation that will support a separate conviction." *People v. Almond*, 2015 IL 113817, ¶ 47. When analyzing one-act, one-crime issues, we first determine "whether a defendant's conduct consisted of separate acts or a single physical act." *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). If the defendant committed multiple acts, the court then determines whether any offenses are lesser-included offenses. *Id.* Whether a violation of the one-act, one-crime rule has occurred is a question of law, which we review *de novo*. *In re Angel P*., 2014 IL App (1st) 121749, ¶ 63. Defendant argues only that the conduct was a single physical act; he does not argue that a lesser-included-offense analysis applies.

¶ 48　Relevant here, count I for first degree murder alleged that defendant without lawful justification, intentionally or knowingly, "beat and killed" Schnackenberg. Count IV for mob action alleged that defendant, "along with one or more persons, acting together and without authority of law, engaged in the knowing or reckless use of force or violence, disturbing the public peace."

¶ 49　Defendant argues that both charges were based upon the "beating" of Schnackenberg, and therefore convictions for both first degree murder and mob action cannot stand. He relies on *People v. Crespo*, 203 Ill. 2d 335 (2001), to argue that, because the State did not apportion the individual blows between the offenses, its "argument for mob action was coextensive" with its argument for first degree murder.

¶ 50　The State responds that defendant committed multiple physical acts which supported multiple convictions. See *People v. Dixon*, 91 Ill. 2d 346, 355-56 (1982) ("[a]s long as there are multiple acts, their interrelationship does not preclude multiple convictions"). The State also notes

that in *Crespo*, our supreme court was concerned by the State's attempt, made for the first time on appeal, to apportion the actions of the defendant to several offenses. *Crespo*, 203 Ill. 2d at 342-44.

¶ 51 Here, defendant characterizes the "beating" in this case as a single physical action, which underlies both the first degree murder conviction and the mob action conviction. However, defendant fails to acknowledge that he and his companions surveyed the alley prior to the offense, that he returned to the alley with the other men while armed with a baseball bat, and that they hid until Howlett brought Schnackenberg into the alley, thus triggering the beating. While the actions of meeting with the other men, arming himself with a baseball bat, hiding, and waiting for Schnackenberg to enter the alley are certainly related to the acts supporting defendant's conviction for first degree murder, we cannot say that "precisely the same physical act" served as the basis for each conviction. See *People v. Miller*, 238 Ill. 2d 161, 165 (2010); see also *Almond*, 2015 IL 113817, ¶¶ 47-48 (finding defendant's simultaneous possession of a firearm and firearm ammunition were multiple acts, and their interrelationship did not preclude multiple convictions).

¶ 52 We find the analysis in *People v. Jimerson*, 404 Ill App. 3d 621 (2010), instructive. In that case, the defendant was found guilty of four counts of aggravated battery to a peace officer and one count of mob action following a fight between detainees and guards in the Cook County Jail. On appeal, the defendant contended that his conviction for mob action was based on the same physical acts as his convictions for aggravated battery. *Id.* at 635.

¶ 53 The evidence in *Jimerson* established that the defendant verbally and physically started the incident and led other prisoners. *Id.* at 637. The defendant struck one officer repeatedly and then held him so that other prisoners could strike him. *Id.* Three other officers were repeatedly struck by other prisoners. *Id.* Accordingly, the evidence supported a finding that the defendant was guilty

of mob action when he and the other prisoners worked in concert to disturb the public peace and aggravated battery to a peace officer when he and the other prisoners struck the officers. *Id.* at 636-37.

¶ 54    Similarly, here, the evidence at trial established that defendant, Howlett and the other men entered the alley, then left. When the group returned, defendant, who was armed with a baseball bat, hid with the others until Howlett brought Schnackenberg outside and sucker-punched her, and she fell, causing defendant and the others to rush toward her. These actions supported a conviction for mob action. Defendant then struck Schnackenberg with a baseball bat and the other man kicked her, causing injuries which resulted in her death, supporting a conviction for first degree murder. Accordingly, we reject defendant's claim that the State's argument for mob action was coextensive with its argument for first degree murder, and find no one-act, one-crime violation.

¶ 55    Defendant finally contends that his 29-year prison sentence for first degree murder should be reduced, or the matter remanded for resentencing, when the trial court relied on speculation when imposing sentence. He further contends that his sentence is unconstitutionally disproportionate to the 20-year sentence imposed on Howlett.

¶ 56    Defendant acknowledges his failure to raise these issues in the trial court, but requests plain error review. In the alternative, he contends he was denied effective assistance when trial counsel failed to raise these claims with specificity in the motion to reconsider sentence.

¶ 57    As discussed, the plain error doctrine permits a reviewing court to consider unpreserved error when (1) the evidence is close, regardless of the seriousness of the error; or (2) the error is serious, regardless of the closeness of the evidence. *Thompson*, 238 Ill. 2d at 613.

¶ 58    In the sentencing context, a defendant must show that an error occurred and either (1) the evidence at the hearing was closely balanced, or (2) the error was so egregious that it denied the defendant a fair hearing. *People v. Hillier*, 237 Ill. 2d 539, 544-45 (2010). As discussed, the first step in plain error review is to determine whether an error occurred (*Hood*, 2016 IL 118581, ¶ 18), and a defendant has the burden to establish plain error (*Thompson*, 238 Ill. 2d at 613).

¶ 59    When determining a sentence, "the trial court has broad discretionary powers." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). We give substantial deference to the trial court because "the trial judge, having observed the defendant and the proceedings, is in a much better position to consider factors such as the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age." *People v. Snyder*, 2011 IL 111382, ¶ 36. Accordingly, a sentence will not be disturbed absent an abuse of discretion. *Stacey*, 193 Ill. 2d at 209-10; see also *People v. Willis*, 2013 IL App (1st) 110233, ¶ 122. An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Johnson*, 347 Ill. App. 3d 570, 574 (2004).

¶ 60    The Illinois Constitution requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The trial court must consider "all factors in aggravation and mitigation, including, *inter alia*, the defendant's age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education, as well as the nature and circumstances of the crime and of defendant's conduct in the commission of it." *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). Where a sentence falls within the statutorily mandated guidelines, it is presumed to be proper and will be overturned only where there is an affirmative

showing that the sentence departs significantly from the "spirit and purpose of the law" or is "manifestly disproportionate to the nature of the offense." *Stacey*, 193 Ill. 2d at 210. Absent some indication to the contrary, other than the sentence itself, a reviewing court presumes the trial court considered all mitigating evidence presented. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 19. A defendant's rehabilitative potential is not entitled to greater weight than the seriousness of the offense. *People v. Reed*, 2018 IL App (1st) 160609, ¶ 62.

¶ 61    In the case at bar, the statutory range for first degree murder was 20 to 60 years. See 730 ILCS 5/5-4.5-20(a) (West 2016). Defendant's 29-year sentence was at the low end of the range and, therefore, presumptively proper. See *People v. Burton*, 2015 IL App (1st) 131600, ¶ 36.

¶ 62    Defendant argues that the trial court expressed an "unsupported" belief that he caused the most harm to the victim and was involved in a shooting the day prior, and discounted "significant" mitigating evidence.

¶ 63    Whether the trial court relied on an improper factor when imposing sentence is a question of law subject to *de novo* review. *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8. When "determining whether the trial court based the sentence on proper aggravating and mitigating factors, a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). There is a strong presumption that the trial court based its sentencing decision on proper legal reasoning. *Id*. at 942-43. Where the trial court considers an improper factor, remand is unwarranted when the record reflects that the court placed insignificant weight on it. See *People v. Sanders*, 2016 IL App (3d) 130511, ¶ 13.

¶ 64    Although defendant is correct that a sentence may not be imposed based on "prejudice, speculation, and conjecture" (*People v. Dempsey*, 242 Ill. App. 3d 568, 597 (1993)), the trial court may properly consider the nature and circumstances of the offense as well as a defendant's actions in committing the offense (*Quintana*, 332 Ill. App. 3d at 109). Considering the record in its entirety, the trial court here did not consider improper factors at sentencing.

¶ 65    To the extent that defendant challenges the trial court's statements that defendant "did the heavy lifting" and struck the "fatal blows," the trial court was permitted to consider the circumstances of the offense and the degree and gravity of defendant's actions. See *Quintana*, 332 Ill. App. 3d at 109. Here, the evidence established that Schnackenberg's cause of death was blunt force injuries to the head and that defendant used a baseball bat to strike her, whereas the other men used their hands and feet. The court properly considered this fact when analyzing the seriousness of the blows struck by defendant. See *People v. Brewer*, 2013 IL App (1st) 072821, ¶ 57 (the fact that a defendant's "conduct threatened or caused serious harm is not a factor inherent in the crime itself"; rather, it is "a proper aggravating factor to be considered during sentencing even in cases where serious bodily harm is implicit in the offense"). It is logical to conclude that blows struck with a baseball bat would cause more harm than blows with hands or feet.

¶ 66    Defendant also argues that the trial court improperly speculated that he was involved in other crimes, namely, the shooting of Coleman the day before the incident. However, the record reveals that the shooting was defendant's explanation for his presence in the alley. The trial court's statement that defendant and the other men were in the alley because of the shooting comports with the explanation defendant and Howlett gave to the police. The court's inference that the men believed Schnackenberg was somehow involved reflected information defendant himself gave to

the police. Moreover, the record, in its entirety, shows that the trial court only briefly touched upon the possible motive for the offense, focusing rather on its violent nature. See *Dowding*, 388 Ill. App. 3d at 943.

¶ 67 Contrary to defendant's argument that the trial court failed to consider mitigating evidence, the court specifically noted that defendant had a minimal criminal background. See *Sauseda*, 2016 IL App (1st) 140134, ¶ 19 (when mitigating evidence is presented to the court, it is presumed, absent some indication to the contrary, other than the sentence itself, that the court considered it). However, the court also found that the offense was "extremely violent," and did not warrant a minimum sentence. The court is not obligated to impose a minimum sentence merely because mitigating factors are present. *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123 (the presence of mitigating factors neither requires a minimum sentence nor precludes a maximum sentence).

¶ 68 We are similarly unpersuaded by defendant's claim that his sentence is unconstitutionally disparate to Howlett's 20-year sentence.

¶ 69 Generally, an arbitrary and unreasonable disparity between the sentences of similarly situated codefendants is impermissible. *People v. Caballero*, 179 Ill. 2d 205, 216 (1997). Fundamental fairness requires that "similarly situated" codefendants, who were involved in the same crime, should not "receive grossly disparate sentences." *People v. Fern*, 189 Ill. 2d 48, 58 (1999); see also U.S. Const., amend. XIV (due process clause); Ill. Const. 1970, art. I, §§ 2, 11 (due process and proportionate penalties clauses). However, a disparity in sentences, by itself, does not establish a violation of fundamental fairness. *Caballero*, 179 Ill. 2d at 216.

¶ 70 "An 'improper sentence disparity' may occur when 'equally culpable defendants with similar backgrounds are given substantially different sentences.' " *People v. Guerrero*, 2020 IL

App (1st) 172156, ¶ 53 (quoting *People v. Ramos*, 353 Ill. App. 3d 133, 139 (2004)). To prevail on a claim of disparate sentencing, a defendant has the burden to demonstrate that he and his codefendant were equally culpable and "similarly situated with respect to background, prior criminal history, and potential for rehabilitation." *Ramos*, 353 Ill. App. 3d at 139. A disparity might be warranted by "differences in the nature and extent" of offenders' participation in the offense or by their criminal history and potential for rehabilitation. *People v. James*, 2017 IL App (1st) 143391, ¶ 159. As discussed, the trial court has broad discretion in sentencing, and its determination will not be reversed absent an abuse of that discretion. *Stacey*, 193 Ill. 2d at 209-10.

¶ 71    Defendant filed a motion in this court to direct the clerk of the circuit court to supplement his record on appeal with Howlett's record on appeal, and in particular, the sentencing transcript and related documents, which we allowed. See *James*, 2017 IL App (1st) 143391, ¶ 162 (in considering a disparate sentencing claim, a reviewing court may take judicial notice of codefendants' criminal history); see *Jimerson*, 404 Ill. App. 3d at 634 (a reviewing court may take judicial notice of codefendant's related appeal).

¶ 72    Defendant contends that his 29-year sentence for first degree murder is unconstitutionally disproportionate to the 20-year sentence imposed on Howlett, a "known drug dealer," when Howlett "lured" Schnackenberg outside, struck her first, and then watched as she was beaten. Defendant notes that no evidence showed that he and Schnackenberg knew each other and that the evidence at trial "suggest[ed]" that Howlett, rather than defendant, had a reason to kill Schnackenberg and was the "likely ringleader." Defendant therefore concludes that because Howlett was more culpable, defendant should not have received a lengthier sentence.

¶ 73    The evidence established that Schnackenberg identified Howlett to police as a drug dealer, and that he was the subject of a police investigation. Footage showed defendant in the alley before the attack. While Howlett brought Schnackenberg to the alley and struck the first blow, defendant struck her with a baseball bat and others also participated in the offense. Although defendant characterizes Howlett as the ringleader of the beating, the record does not establish that conclusion and we decline defendant's invitation to speculate thereon.

¶ 74    The evidence at their respective sentencing hearings established that defendant and Howlett had supportive families and neither had an extensive criminal history. Howlett was in his 20s, had not completed high school, and was allegedly Schnackenberg's drug dealer. Defendant was in his 30s, completed high school, and was previously employed. While the men were similarly situated in their family and criminal backgrounds, we do not find defendant's 29-year sentence was unconstitutionally disparate to Howlett's 20-year sentence, considering their ages and their actions during the offense. See *James*, 2017 IL App (1st) 143391, ¶ 159.

¶ 75    First, while defendant is correct that he completed high school and was previously employed, whereas Howlett only completed the 10th grade and was employed intermittently, there was an age difference between the two men. Defendant was in his 30s and Howlett was in his 20s, and this age disparity could have been a fact which the trial court considered when determining each man's rehabilitative potential.

¶ 76    Second, the disparity in defendant's and Howlett's sentences is warranted by differences in the nature and extent of their participation in the offense. Howlett led Schnackenberg outside and struck her first, but the video of the beating revealed that Howlett only used his fist. Defendant, on the other hand, brought a baseball bat to the ambush and repeatedly struck Schnackenberg with

it. While defendant argues that the footage of the beating is "so grainy" that is unclear whether anyone else was armed and that the offender "identified" as defendant is only "alleged" to have been armed with a bat, the evidence at trial established that defendant was present in the alley and struck Schnackenberg with a baseball bat. The fact that defendant was armed with a baseball bat was specifically mentioned by the trial court at sentencing, when the court found that defendant "did all the heavy lifting." Thus, the trial court considered the issue of relative culpability, and found that defendant, because of his actions during the offense, did not warrant a minimum sentence.

¶ 77    Considering the facts of this case, we cannot find the trial court abused its discretion when imposing a sentence nine years above the minimum sentence for first degree murder. Accordingly, we find defendant's sentence was proper.

¶ 78    As defendant has failed to establish error, there can be no plain error and his procedural forfeiture of the sentencing claim must be honored. *Hood*, 2016 IL 118581, ¶ 18; see also *People v. Williams*, 2017 IL App (1st) 150795, ¶ 40 ("There was no error, let alone 'plain' error, and so we need not go further in the plain error analysis.").

¶ 79    For the same reason, defendant's claim that he was denied effective assistance because trial counsel failed to raise these issues with specificity in the motion to reconsider sentence must fail. A defendant alleging ineffective assistance must prove prejudice, such that "absent counsel's deficient performance there is a reasonable probability that the result of the proceeding would have been different." *People v. Evans*, 209 Ill. 2d 194, 219-20 (2004) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984)). As the trial court did not abuse its discretion, defendant cannot demonstrate any reasonable probability that the result would have been different had trial counsel

properly preserved these issues. See, *e.g.*, *People v. Brown*, 2017 IL App (1st) 142877, ¶ 66 (counsel was not ineffective for failing to file motion to reconsider sentence where there was no reasonable probability that the sentence would have been different had the motion been filed).

¶ 80    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 81    Affirmed.