NOTICE

Decision filed 04/06/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 240918-U

NO. 5-24-0918

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Montgomery County. |
| | ) | |
| v. | ) | No. 21-CF-329 |
| | ) | |
| ROBERT J. TARR, | ) | Honorable |
| | ) | Christopher W. Matoush, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE SHOLAR delivered the judgment of the court.
Justices Moore[*] and Hackett concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Defendant's 85-year sentence for first degree murder and attempted first degree murder is affirmed where the sentence was neither excessive nor an abuse of discretion.

¶ 2     A Montgomery County jury found defendant, Robert J. Tarr, guilty of first degree murder and attempted first degree murder. The trial court sentenced defendant to 85 years in prison. On direct appeal, defendant argues that his sentence was excessive. For the reasons that follow, we affirm.

_____

[*]Justice Moore fully participated in the decision prior to his retirement. See *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6 (1992).

1

¶ 3                                    I. BACKGROUND

¶ 4      We recite only the facts necessary to address the specific argument of the parties on appeal. The State charged defendant with three counts of first degree murder following the death of Leslie Reeves. The State charged defendant with one count of attempted first degree murder of Christopher Smith. Both charges set forth the 25-year firearm enhancements related to defendant's personal discharge of a firearm during the commission of the offenses.

¶ 5      The matter proceeded to a jury trial. The evidence established that defendant and Reeves were in a dating relationship. The two ended their relationship in the summer of 2021. Following the breakup, Reeves began a relationship with Smith. Nanette Stuiber, a friend of Reeves, tried to reach her on November 24, 2021. Stuiber was unable to contact Reeves, and she ultimately contacted police to perform a wellness check at Smith's home in Farmersville, Illinois. Stuiber also went to Smith's home, where she observed Smith lying on the floor in the kitchen.

¶ 6      First responders arrived and found Reeves dead in the dining room from a gunshot wound to the head. Responders testified that blood was throughout the home, and shell casings were found in the home. Law enforcement recovered a firearm from defendant's yard which was later identified as the gun that fired the bullets recovered from Reeves' body. Smith survived with permanent and extensive injuries. Cell phone records demonstrated that defendant's phone communicated with a cell tower near Farmersville on November 24 and November 25. Investigators recovered deleted activity from defendant's phone from the evening of November 24 showing searches for Christopher Smith and his address.

¶ 7      The jury found defendant guilty of first degree murder and attempted first degree murder. The jury also determined that defendant personally discharged a firearm that proximately caused the death of Leslie Reeves and great bodily harm or permanent disfigurement to Christopher Smith.

2

¶ 8    On July 1, 2024, the matter proceeded to sentencing. The trial court noted that the sentencing range for the first degree murder conviction was 20 to 60 years. The court noted that defendant was subject to the 25-year firearm enhancement. For attempted murder, the court noted that the sentencing range was 6 to 30 years, which also was subject to the 25-year firearm enhancement. The court advised that the sentences would be served consecutively.

¶ 9    The State did not have any evidence in aggravation. However, the State presented victim impact statements. The Reeves family submitted a victim impact statement through a letter to the court, which was not read into the record. The victim, Christopher Smith, made a victim impact statement. Smith testified that he suffered a gunshot wound to the head, and doctors could not remove the 9-millimeter bullet from his brain. Smith suffered "two massive strokes" and was paralyzed on the left side. Smith testified that he "had six brain surgeries" and "had two plates put in my head." Smith was in a coma for three months.

¶ 10    Smith testified that he could no longer work or care for his child. In addition to his physical limitations, he suffered "emotionally." Smith testified "it is like the defendant killed me without killing me." Smith felt that his "whole future is gone." Smith stated, "I have lost my house, my job, my ability to be a father, my dog and any chance of living my life as I hoped to live it."

¶ 11    Following argument and sentencing recommendation from the State, the following exchange occurred:

> "DEFENSE COUNSEL: I am concerned that the factor that [the State] cited in terms of aggravation has already considered in the offense itself as an element, and I'm concerned about error in reconsidering that in addition to it already being considered.

THE COURT: Not to interrupt you, [defense counsel], but to make the record clear, this Court is not going to consider two-fold any offenses that were listed in the Presentence Investigation that it did not result in convictions. I believe there is some pending charges. There was no evidence presented, so I'm not considering that anyway, but I want to make that clear on the record. And I at this point also agree with [defense counsel] with regards to the statutory factor of caused or threatened serious harm. I do believe that that's inherent which is kind of what [the State] I believe had implied, but I'm going to show for the most part that is inherent in the offense.

THE STATE: That's what I meant to indicate, Judge. It's inherent in the offense. We're not asking you to consider it in addition to that inherent nature.

THE COURT: So I think the Court and attorneys are on the, for lack of a better term, on the same page. We're in agreement with that. That's not an statutory factor that this Court will consider in aggravation."

¶ 12 Defendant presented no evidence in mitigation. Following argument from the parties, defendant made a statement in allocution. Defendant denied committing the offenses. Defendant recapped the evidence, and following 20 pages of his statement, the trial court interrupted defendant. The following occurred:

"THE COURT: Mr. Tarr, are you wanting to address—this Court heard the evidence.

MR. TARR, DEFENDANT: Actually, Your Honor—

THE COURT: You chose not to testify.

MR. TARR, DEFENDANT: I did.

4

THE COURT: You chose, which is your absolutely right, so that you count [*sic*] be cross-examined by the State. I understand that. So, again, I want to make sure you understand the purpose of this statement of allocution.

MR. TARR, DEFENDANT: Um hum. I do.

THE COURT: All right. This isn't for you to indicate whatever you believed happened or could have happened. All right? So if you want to address the Court on an issue or anything that I should know before I pronounce sentencing, I'm not sure if this is helping you with any with regard to any sentence that I may impose. So we need to move it along.

MR. TARR, DEFENDANT: Okay. Your Honor, basically I'm just explaining my actions that night and possibly things that didn't get brought up through my trial was my intentions.

THE COURT: That's not the purpose of a statement of allocution. So, again, we don't need to go play by play through the evidence that the Court heard.

MR. TARR, DEFENDANT: Okay. Your Honor. Thank You."

Following this exchange, defendant stated that there were issues of doubt in his case, and he was wrongfully convicted.

¶ 13    In rendering its sentence, the trial court stated that it considered the presentence investigation report (PSI), the evidence presented at trial, the statement in allocution, arguments of the attorneys, the victim impact statements, the statutory and nonstatutory factors in aggravation and mitigation "whether I specifically mentioned them or not," and the history and character of defendant. The court noted that it considered the seriousness of the offense and the objective of "restoring the defendant to useful citizenship." The court noted in mitigation that although

5

defendant had a prior criminal history, defendant did not have a history of violent offenses. Because defendant essentially faced life in prison with a minimum sentence, in aggravation, the court noted that even a minimum sentence would create deterrence. The court also noted "the nature of the charges in and of themselves, the seriousness, is a general deterrence in and of itself."

¶ 14 During sentencing, the court commented that defendant's actions "devastated" "three families." The court noted that Smith "had two strokes, he's been paralyzed, six surgeries, two plates in his head" after defendant left him "bleeding apparently in the kitchen for several hours." The court observed that defendant "impacted [Smith's] family, himself and his family, in ways to such a degree." The court also noted that defendant impacted the family of Leslie Reeves. The court indicated that it read the victim impact statement from her family. The court observed that defendant's children and family had to testify at trial, yet chose not to testify in mitigation during defendant's sentencing hearing.

¶ 15 Turning to nonstatutory factors, the court determined that defendant's age was a consideration. The trial court noted that defendant would never "walk out of prison" even if he received the minimum sentence. However, the court determined that a minimum sentence was not appropriate, because it "would deprecate the seriousness of your conduct and would be inconsistent with the ends of justice." The court observed:

"You, on the night before Thanksgiving back in 2021, you searched out for Mr. Smith. You searched out for Miss Reeves. The seriousness of this offense, the fact that your intent was clear as evidenced by the—as indicated by the evidence, you chose to go to that residence with hollow point ammunition in that Hellcat, bullets designed to fragment, to cause the most damage and harm possible. With regards to Miss Reeves, the jury found and the Court has confirmed their verdict that you

6

discharged the weapon, as you indicated, within 6 to 18 inches of her head, one shot directly downward not only cracking the skull or not only penetrating the skull but cracking, again, to create the most damage possible in her death.

"With regards to Mr. Smith, you shot him in the head, left him bleeding in his kitchen for hours before anybody could come, and he fought for his life and has survived and, again, he's indicated the damage is to his person. These are egregious attempted murder [*sic*]. It's an egregious murder. The suffering that Mr. Smith experienced both at the time and for the years past is evident to this Court, and then you get a statement of allocution, your opportunity to address anyone, and the only thing this Court got from that statement of allocution is you have absolutely zero remorse for the actions that you took. To sit here and say in your statement of allocution that you felt sorry for Mr. Smith who is in the courtroom that he experienced such torture, that you felt sorry for Miss Reeves because she always wanted a family life, you are the one that indicated and stopped those things from being able to occur. You've accepted no responsibility but, again, you went above and beyond not accepting any remorse to the situation. And then at one point through the course of your statement of allocution part of this you're blaming on your daughter, Shelby, that you said some inconsistent statement because you are the victim because you wanted to be with Miss Reeves but Shelby didn't want Miss Reeves around? That is incredible to this Court ***."

¶ 16    The trial court explained that it balanced "all of these factors" and "because of [defendant's] age" the court sentenced defendant to 50 years for first degree murder. Specifically, the court noted that defendant's sentence was 25 years for first degree murder, plus the 25-year

7

mandatory firearm enhancement. The court sentenced defendant to 35 years for attempted first degree murder. Specifically, the court sentenced defendant to 10 years for attempted murder, plus the 25-year mandatory firearm enhancement. Thus, the court sentenced defendant to an aggregate total of 85 years in prison.

¶ 17　Defendant filed a motion to reconsider sentence. In the motion, defendant argued that the trial court "failed to adequately consider and place the proper weight upon the mitigating factors presented in contrast to the excessive weight placed upon applicable factors in aggravation, in addition to improperly considering and weighing inapplicable factors in aggravation."

¶ 18　The trial court held a hearing on the motion to reconsider sentence on August 9, 2024. Defense counsel reiterated its position that the sentence imposed was excessive. In its oral pronouncement, the court stated:

> "I've considered the additional arguments made today. For the reasons that I indicated in detail on July 1, 2024, at the Sentencing Hearing, including all factors in mitigation and aggravation, both statutory, whether I addressed them or not and nonstatutory which were considered by the Court, this Court does believe that the sentence imposed is an appropriate sentence."

Thus, the court denied the motion to reconsider sentence.

¶ 19　This timely appeal followed.

¶ 20　　　　　　　　　　　　　　II. ANALYSIS

¶ 21　On appeal, defendant contends that the trial court abused its discretion by sentencing him to 85 years in prison. Specifically, he argues that "the court improperly based its sentence on a factor inherent in the offense, namely, the infliction of bodily harm, failed to adequately consider

8

[defendant's] potential for rehabilitation, and punished [defendant] for maintaining his innocence." For the reasons that follow, we affirm defendant's sentence.

¶ 22     The sentencing range for first degree murder was 20 to 60 years. 730 ILCS 5/5-4.5-20(a) (West 2020). Defendant received a mandatory statutory add-on to his sentence for first degree murder for personally discharging a firearm. *Id.* § 5-8-1(a)(1)(d)(iii). Attempted murder is generally a Class X felony, which provides for a baseline sentencing range of 6 to 30 years in prison. 720 ILCS 5/8-4(c)(1) (West 2020); 730 ILCS 5/5-4.5-25 (West 2020). Defendant received a mandatory statutory add-on to his sentence for attempted murder for personally discharging a firearm. 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2020). Furthermore, as noted by the court and agreed by both parties, the attempted first degree murder sentence was required to be served consecutively to the sentence for first degree murder. *Id.* § 5-8-4(d)(1). Accordingly, the sentencing range for defendant was 76 years to life in prison.

¶ 23     The Illinois Constitution of 1970, article I, section 11, requires that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "A sentencing court must not only consider rehabilitative factors in imposing a sentence, it must also make rehabilitation an objective of the sentence." *People v. Wendt*, 163 Ill. 2d 346, 352-53 (1994). In fashioning an appropriate sentence, the trial court must consider the defendant's "credibility, demeanor, general moral character, mentality, social environment, habits, and age" and impose a sentence based on the circumstances of each case. (Internal quotation marks omitted.) *People v. Pina*, 2019 IL App (4th) 170614, ¶ 19. The court must also carefully consider the statutory factors in mitigation and aggravation. *People v. Center*, 198 Ill. App. 3d 1025, 1033 (1990). The court is not, however, required to recite and assign a value to each factor considered. *Pina*, 2019 IL App (4th) 170614,

9

¶ 19. There is a presumption that a circuit court considers all mitigating evidence presented. *People v. Abrams*, 2015 IL App (1st) 133746, ¶ 33.

¶ 24    A trial court's sentencing decision is entitled to great deference. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). Such deference is granted "because the trial court is generally in a better position than the reviewing court to determine the appropriate sentence." *Id.* "If a sentence falls within the statutory limits, it will not be overturned on appeal absent an abuse of discretion." *People v. Bunning*, 2018 IL App (5th) 150114, ¶ 16. "An abuse of discretion occurs only if a sentence greatly varies from the spirit and purpose of the law or where it is manifestly disproportionate to the nature of the offense." *Id.*

¶ 25    As an initial matter, the State contends that the specific issues on appeal are forfeited where defendant failed to raise these particular issues in his motion to reconsider sentence. Defendant's motion to reconsider sentence merely argued that the trial court imposed an excessive sentence without laying out the specific arguments related to improper consideration of a factor inherent in the offense or the court's alleged consideration of defendant maintaining his innocence. We note that in defendant's initial brief, defendant did not raise the issue under plain error. However, in reply, defendant contends that his forfeiture should be excused where he established plain error "by showing a clear or obvious error."

¶ 26    The plain-error rule is a narrow and limited exception to the general rule of forfeiture. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). To obtain relief under this rule, a defendant must first show that a clear or obvious error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing. *Hillier*, 237 Ill. 2d at 545.

¶ 27     First, defendant argues that the court improperly relied upon an aggravating factor that was implicit in the crime charged. Specifically, he contends that the trial court considered that defendant's conduct caused serious injury, and the court expressed a need to ensure that defendant's sentence deterred others. We disagree.

¶ 28     In determining an appropriate sentence, the relevant factors that should be considered include the nature of the crime, the protection of the public, deterrence, punishment, and the defendant's rehabilitative potential. *People v. Bryant*, 2016 IL App (1st) 140421, ¶ 14. "The weight to be attributed to each factor in aggravation and mitigation depends upon the particular circumstances of the case." *People v. Garibay*, 366 Ill. App. 3d 1103, 1109 (2006). However, a trial court is prohibited from considering, as a factor in aggravation, a fact implicit or inherent in the offense for which the defendant is convicted. *People v. Morrow*, 2014 IL App (2d) 130718, ¶ 13. Thus, a single factor cannot be used both as an element of the offense and as a basis for imposing a harsher sentence. *Id.*

¶ 29     A trial court may consider the seriousness, nature, and circumstances of the offense, which includes the nature and extent of each element of the offense committed by the defendant. *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). Also, the degree of harm caused to the victim may be considered as an aggravating factor, as the commission of any offense can have varying degrees of harm or threatened harm. *People v. Saldivar*, 113 Ill. 2d 256, 269 (1986). When determining whether the trial court based the sentence on proper aggravating and mitigating factors, the reviewing court should consider the record as a whole, rather than focusing on a few words or statements by the trial court. *Morrow*, 2014 IL App (2d) 130718, ¶ 14. The defendant has the burden to affirmatively establish that the sentence was based on improper considerations. *Dowding*, 388 Ill. App. 3d at 943. While the imposition of sentence is generally a matter of judicial

discretion, the question of whether the trial court relied on an improper factor is a question of law, subject to *de novo* review. *People v. Bowen*, 2015 IL App (1st) 132046, ¶ 49.

¶ 30    In the case before us, the record affirmatively rebuts defendant's claim on appeal. After hearing Smith's victim impact statement, the sentencing recommendations of the State, and argument from the State, defense counsel explicitly cautioned the trial court against considering a factor inherent in the offense. In response, the trial court agreed, noting that it would not consider "a statutory factor of caused or threatened serious harm" because it was "inherent in the offense." When the trial court ultimately rendered its sentence, the comments of the trial court, taken as a whole, demonstrate that it considered the harm caused by defendant's conduct. The court considered the physical manner in which the injuries occurred and the nature and circumstances of the offense. Therefore, our review of the record demonstrates that the trial court considered the nature and circumstances of the offense as a whole rather than an element inherent in the offense. Accordingly, defendant failed to establish that clear or obvious error occurred, and therefore, he is unable to establish plain error.

¶ 31    Defendant next argues that the trial court failed to consider his rehabilitative potential. Defendant's brief contends that at no point did the trial court "even mention rehabilitation." We disagree. A defendant's rehabilitative potential is not entitled to more weight than the seriousness of the offense. *People v. Alexander*, 239 Ill. 2d 205, 214 (2010). A sentencing "court has no obligation to recite and assign value to each factor presented at a sentencing hearing." (Internal quotation marks omitted.) *People v. Brazziel*, 406 Ill. App. 3d 412, 434 (2010). In rendering its sentence, the trial court noted that it considered the seriousness of the offense and the objective of "restoring the defendant to useful citizenship." Thus, defendant's assertion is contrary to the record

12

before us. Where defendant's claim is affirmatively rebutted by the record, he failed to establish clear or obvious error at his sentencing hearing.

¶ 32    Finally, defendant contends that the trial court "punished" him for maintaining his innocence. We disagree. "A trial court should not automatically and arbitrarily consider a defendant's insistence on his or her innocence as an aggravating factor when sentencing him." *People v. Perkins*, 408 Ill. App. 3d 752, 763 (2011). A defendant's failure to show remorse or a penitent spirit may be properly considered in determining his sentence, but these factors must be evaluated in light of all other relevant factors. *People v. Thompson*, 234 Ill. App. 3d 770, 779 (1991). A trial court is at liberty to express its belief of defendant's guilt; it is also free to consider defendant's protestations of innocence, lack of remorse, and veracity as demonstrative of his character and prospects for rehabilitation. *People v. Charleston*, 2018 IL App (1st) 161323, ¶ 29; *People v. Speed*, 129 Ill. App. 3d 348, 349 (1984).

¶ 33    Despite defendant's arguments to the contrary, there is nothing in the record to indicate that the trial court imposed a more severe sentence due to any declaration of innocence by defendant. Rather, the record demonstrates that the court merely considered defendant's lack of remorse. The trial court's isolated comment that "the only thing this Court got from that statement of allocution is you have absolutely zero remorse for the actions that you took" does not require us to conclude that the trial court would have given defendant a lesser sentence had defendant admitted his guilt. Where the trial court did not impermissibly consider defendant's insistence on his innocence, defendant failed to establish clear or obvious error at his sentencing hearing.

¶ 34    As a whole, defendant essentially asks this court to reweigh the sentencing factors, claiming that his 85-year sentence is excessive. While it is true a trial court's sentencing discretion is "not unfettered" (*People v. O'Neal*, 125 Ill. 2d 291, 297 (1988)) and that the appellate court was

13

never meant to be a "rubber stamp" for the sentencing decisions of the trial court (*People v. Woodson*, 2024 IL App (1st) 221172, ¶ 89), it is also axiomatic that this court "must not substitute its judgment for that of the trial court merely because [we might] have weighed" the pertinent sentencing factors differently. *Stacey*, 193 Ill. 2d at 209. A reviewing court's role is not to reweigh the sentencing factors or substitute its judgment for that of the trial court. *People v. Klein*, 2022 IL App (4th) 200599, ¶ 37. Here, the record reflects that the court considered the evidence and arguments of the parties, the PSI, the history, character, and attitude of defendant, and the relevant statutory factors in aggravation and mitigation. The factors considered by the sentencing court provide a sufficient basis for the prison sentence imposed in this matter, and the court's sentence was within the statutory range of sentences permissible. For these reasons, under the facts and circumstances of this case, we do not find that defendant's sentence was excessive or that the court abused its discretion in sentencing defendant.

¶ 35                                    III. CONCLUSION

¶ 36    For the foregoing reasons, we affirm the judgment and sentence of the circuit court of Montgomery County.


¶ 37    Affirmed.

14